ENRIQUE PETROVICH BOSCIO, demandante y apelante, *v.* SECRETARIO DE HACIENDA, demandado y apelado.

Número 11143.

*Sometido:* 3 de abril de 1956. *Resuelto:* 30 de abril de 1956.

*Córdova & González,* abogados del apelante; *Hon. Secretario de Justicia José Trías Monge* y *J. C. Santiago Matos, Procurador Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del Tribunal.

### EN RECONSIDERACIÓN

El contribuyente solicita de este Tribunal que reconsidere su dictamen confirmando la sentencia apelada. En síntesis se plantean dos cuestiones: (1) ¿es deducible la pérdida neta que sufrió la sociedad en 1940, a los fines de determinar el *ingreso neto distribuíble* en 1941 (es decir, los beneficios sociales en dicho año que están sujetos al pago de contribución sobre ingresos por los socios aunque no hayan sido distribuídos) en la misma forma que la referida pérdida neta es deducible para determinar el *ingreso neto tributable* de la sociedad en 1941? y (2) ¿es aplicable la defensa de la reconvención o "recoupment" contra la deficiencia que el demandado notificó al contribuyente para 1941?

Sobre los hechos no hay controversia. Petrovich y su esposa eran socios comanditarios de Monllor & Boscio, Sucrs., S. en C., desde 1940 hasta 1943, inclusive. En 1940 la sociedad tuvo una "pérdida neta" en operaciones de $47,853.41 que el Tesorero aceptó como deducción del ingreso bruto a los fines de determinar el ingreso neto tributable de la sociedad para el año 1941. Los beneficios sociales habidos en 1941 no se distribuyeron durante dicho año, pero fueron distribuídos durante los años de 1942 y 1943. Petrovich no declaró como ingreso en 1941 la parte que le correspondía de los beneficios no distribuídos que tuvo la sociedad en dicho año. Pero al ser distribuídos esos mismos beneficios en 1942 y 1943, Petrovich los declaró en sus planillas y pagó las correspondientes contribuciones sobre ingresos. En 1950 el demandado notificó a Petrovich una deficiencia en su contribución sobre ingresos para el año de 1941, basada en los beneficios habidos y no distribuídos por la sociedad en ese mismo año que correspondían al contribuyente y a su esposa pero que no fueron declarados en la planilla de Petrovich correspondiente al 1941. A los fines de determinar los beneficios de la sociedad en 1941, es decir, el ingreso neto *distribuíble* de la sociedad en dicho año, el demandado no admitió la deducibilidad de la "pérdida neta" sufrida por la sociedad en el año 1940. Por tanto, al ingreso neto *tributable* de la sociedad para el año 1941, el demandado añadió la cantidad de $47,853.41 que fué la "pérdida neta" sufrida por la sociedad en el año de 1940.

▮ Los problemas que plantea este caso surgen, en primer lugar, de la enmienda que hizo la Ley núm. 31 de 12 de abril de 1941 a la sec. 4 (a) de la antigua Ley de Contribuciones sobre Ingresos, y, en segundo lugar, del hecho de que, cuando el demandado notificó la deficiencia a Petrovich para el año 1941, ya había expirado el término para solicitar el reintegro por las contribuciones que Petrovich pagó en exceso durante los años 1942 y 1943. Desde 1941 hasta 1949 aparentemente el Tesorero y los contribuyentes ignoraban que, según la Ley núm. 31 de 1941, basta que surja el derecho a

participar en los beneficios determinados por una sociedad (aunque no hayan sido distribuídos ni recibidos por los socios) para que éstos estén obligados a pagar la contribución de ingresos sobre los mismos. Véanse *Tesorero* v. *Tribl. Contribuciones y Ballester*, 69 D.P.R. 750 (1949), 70 D.P.R. 386 (1949) y la Ley núm. 424 de mayo 13 de 1951. Por esa razón Petrovich no declaró como ingreso en 1941 la parte que le correspondía de los beneficios que la sociedad tuvo en ese año, pero que no fueron distribuídos, y sin embargo, declaró y pagó contribución de ingresos sobre los referidos beneficios en los años en que la sociedad los distribuyó, es decir, en 1942 y 1943.

En virtud de la referida enmienda a la sec. 4(*a*) surgió en nuestro derecho contributivo un nuevo concepto: "el ingreso neto distribuíble de una sociedad". Sabemos que se refiere a los beneficios o utilidades de cualquier sociedad que correspondan a los socios en cada año contributivo aunque no hayan sido distribuídos o recibidos por éstos. Pero la ley no nos dice expresamente cómo se determina dicho "ingreso neto distribuíble". Sólo existe una definición clara y precisa del concepto de *ingreso neto tributable* de la sociedad en cada año contributivo. Ahora bien, es obvio que ambos están íntimamente relacionados aunque en ciertos respectos son distintos. En *Descartes* v. *Tribl. Contribuciones y Sucn. Cautiño*, 71 D.P.R. 248 (1950) señalamos que: ". . . una cosa es el ingreso neto tributable y otra cosa es el ingreso neto distribuíble . . . ya que hay partidas, como por ejemplo las de contribuciones sobre ingresos y donativos que por no ser deducibles a los fines de la contribución sobre ingresos, forman parte del ingreso neto tributable de la sociedad y, no obstante ello, no forman parte de los ingresos netos distribuíbles de la misma". (Pág. 251.) Sin embargo, sería absurdo sostener que las deducciones al ingreso bruto, que la ley expresamente permite para determinar el ingreso neto tributable de la sociedad, no pueden aceptarse como deducciones a los fines de determinar el ingreso neto distribuíble. Aun el demandado

acepta que las deducciones admitidas por la sec. 32 a la sociedad para computar su ingreso neto tributable son también aceptables para el cómputo del ingreso neto distribuíble que está sujeto al pago de contribución sobre ingresos por los socios. Lógicamente no hay base alguna para distinguir entre las deducciones enumeradas en la sec. 32 y la deducción por "pérdida neta" que dispone la sec. 9, a los fines de determinar el ingreso neto distribuíble de la sociedad. El Tesorero no puede arbitrariamente conceder ciertas deducciones y rechazar otras. Todas las deducciones al ingreso bruto que la ley admite para determinar el *ingreso neto tributable* en un año contributivo son también admisibles para determinar el ingreso neto distribuíble de la sociedad en el mismo año contributivo. Por tal razón, el ingreso neto distribuíble de una sociedad nunca puede ser *mayor* que el ingreso neto tributable en cualquier año contributivo, aunque sí puede ser *menor* de acuerdo con lo resuelto en *Descartes* v. *Cautiño*, supra. La validez de esta norma general se comprueba con facilidad si analizamos específicamente la deducción de la "pérdida neta" en operaciones de la sociedad que es el problema específico que nos plantea el caso de autos. Se permite arrastrar la pérdida neta en operaciones al año siguiente, al computar el ingreso neto tributable de la sociedad, porque la Legislatura quiso remediar o minimizar ciertas injusticias que surgen cuando existe un año contributivo como unidad de medida rígida. Es decir, resulta injusto imponer contribuciones muy altas sobre ingresos recibidos en un año contributivo si el contribuyente ha tenido fuertes pérdidas en operaciones durante el período de desarrollo del negocio que más adelante le permiten producir ingresos sustanciales. Exactamente las mismas razones existen para permitir el arrastre de la "pérdida neta" en operaciones al año siguiente (según la define la sec. 9) a los fines de determinar el ingreso neto distribuíble entre los socios sujetos al pago de contribu-

ción sobre ingresos por éstos en virtud de la sec. 4(a) de la antigua Ley de Contribuciones sobre Ingresos.(1)

 En cuanto a la reconvención o "recoupment", el Tribunal Superior se limitó sin más explicación a declararla sin lugar por falta de pruebas. Originalmente confirmamos dicha conclusión—en la sentencia que se dictó en noviembre 3 de 1954 (77 D.P.R. 164) y que ahora reconsideramos—a base de la doctrina del caso de *Lewis* v. *Reynolds*, 284 U. S. 281 (1932). Resolvimos que:

". . . el hecho de que la deficiencia esté basada en unos beneficios, habidos y no distribuídos en 1941 y que esos beneficios o parte de ellos tributaron en 1942 y 1943, no implica por sí solo que el contribuyente tenga un crédito contra el Gobierno, si en realidad él no ha demostrado que pagó contribuciones en exceso, en los años 1942 y 1943. Estos años no han estado en controversia ni han sido abiertos por actuación alguna del Tesorero para su investigación, ni los tuvo ante sí la corte a quo. No pueden, pues, reexaminarse todas sus partidas tanto el ingreso declarado como las deducciones y exenciones reclamadas, a fin de poder determinar que por razón de haberse incluído en dichos años los beneficios distribuídos por la sociedad durante los mismos, resultaba un pago en exceso, en caso de que esos mismos beneficios tributaran en el año 1941. Correspondía al contribuyente probar que en los años 1942 y 1943, pagó en exceso, las contribuciones sobre ingresos que por ley venía obligado a pagar. No lo hizo y a falta de tal demostración, no puede invocar la doctrina de reconvención.

"Si en una reclamación de reintegro fundada en un pago en exceso en determinado año, el Secretario de Hacienda tiene facultad para investigar todo dicho año, y cuantas partidas figuren en el mismo a fin de determinar si realmente hubo el pago en exceso,

---

(1) *Calaf* v. *Sec. de Hacienda*, 76 D.P.R. 577 (1954) no resolvió la cuestión que se plantea en el caso de autos. Allí los socios invocaron la sec. 9 de la antigua Ley de Contribuciones sobre Ingresos (13 L.P.R.A. sec. 631 y sigtes.) para deducir la pérdida neta en operaciones sufridas por la sociedad en 1940, 1941 y 1943 *del ingreso bruto derivado de otras fuentes por cada socio en los años mencionados*. Por las razones que allí expusimos se justifica la conclusión de que los socios (o partícipes de la empresa común) no tienen derecho a deducir en sus planillas individuales ninguna parte de las pérdidas de la empresa o sociedad (pág. 584). Cf. *Sucn. Serrallés* v. *Tesorero*, 6 D.T.C. 485 (1950).

lo que implica una redeterminación de toda la responsabilidad contributiva en dicho año, *Lewis* v. *Reynolds,* 284 U. S. 281, no vemos cómo el contribuyente pueda alegar por vía de reconvención o *recoupment,* un pago en exceso fundado en una sola de las partidas envueltas. Obviamente la determinación aislada que se haga sobre dicha partida no daría base suficiente para resolver si en el año contributivo en cuestión se hizo o no un pago en exceso." (Págs. 170–171.)

El contribuyente, en su moción de reconsideración, alega en suma: (1) que la doctrina de la reconvención no está limitada por la regla del caso de *Lewis* y que, por tanto, él no viene obligado a demostrar que pagó contribuciones en exceso en los años 1942 y 1943 después de un reajuste completo de todas las partidas incluídas en dichos años; (2) que tanto la deficiencia de 1941 como el exceso pagado en 1942 y 1943 surgen de la misma "transacción", según ese término se usa en la doctrina de la reconvención; (3) que como el Tesorero se niega a devolver o a acreditar las contribuciones que él pagó en exceso durante los años de 1942 y 1943, amparándose en que el término prescriptivo de cuatro años para solicitar el reintegro ya expiró, también existe la "inconsistencia" que se requiere para que sea aplicable la doctrina de la reconvención; y, por último, (4) que de aplicarse estrictamente el término prescriptivo resultaría un enriquecimiento injusto (es decir, el Tesorero cobraría dos veces contribuciones sobre los mismos ingresos), por lo cual es de aplicación la defensa de la reconvención que, contrario a la del *estoppel,* no depende de si una parte indujo a la otra a cometer un error. [2]

---

[2] Véase al respecto: *González Padín* v. *Tribl.,* 66 D.P.R. 964 (1947); *Cía. Azucarera del Toa* v. *Tribl.,* 72 D.P.R. 909, 924–928 (1951); *Ronrico Corp.* v. *Tesorero,* 77 D.P.R. 411 (1954); *Rothensies* v. *Electric Storage Battery Co.,* 329 U. S. 296 (1946); Maguire y Zimet, *Hobson's Choice in Federal Taxation,* 48 Harv. L. Rev. 1281 (1935); *Estoppel and Recoupment in Federal Taxation After the Revenue Act of 1938,* 52 Harv. L. Rev. 300 (1938); *The Effect of Section 609 of the Revenue Act of 1928,* 52 Harv. L. Rev. 496 (1939); 10 Mertens, *The Law of Federal Taxation,* secs. 58.38 y 58.39; 10-A Mertens, supra, secs. 60.01–60.19; *Equity in the Administration of the Revenue Act,* 39

Por razones jurisdiccionales, creemos que es improcedente resolver las cuestiones planteadas por el contribuyente en torno a la teoría de la reconvención o "recoupment". La sec. 57(h) de la Ley, según fué reenactada en 8 de octubre de 1954 en virtud de la Ley núm. 9 ((2) págs. 123 y sigtes.), dispone que: "El Tribunal Superior al considerar una deficiencia con respecto a cualquier año contributivo considerará aquellos hechos relacionados con las contribuciones para otros años contributivos según fuere necesario para determinar correctamente el monto de dicha deficiencia, *pero al así hacerlo no tendrá facultad para resolver si la contribución para cualquier otro año contributivo ha sido pagada en exceso o de menos.*" (Pág. 141.)

La referida sec. 57(h) limita la jurisdicción de los tribunales en Puerto Rico, en casos de deficiencias respecto a contribuciones sobre ingresos, en la misma forma en que la sec. 272(g) del Código Federal de Rentas Internas de 1939 (sec. 6214(b) del Código Federal de 1954) limita la jurisdicción del Tribunal de Contribuciones Federal (*Tax Court*), antes conocido como la Junta de Apelaciones Contributivas (*Board of Tax Appeals*).[3] En *Comm'r* v. *Gooch Milling & Elevator Co.*, 320 U. S. 418 (1943), el Tribunal Supremo de

---

Col. L. Rev. 460 (1939); McConnell, *The Doctrine of Recoupment in Federal Taxation*, 28 Va. L. Rev. 577 (1942); Atlas, *The Doctrine of Estoppel in Tax Cases*, 3 Tax L. Rev. 71, 86–87 (1947); Nota, 12 A.L.R.2d 815; Mintz y Plumb, *Taxing Income in Years Not Realized Under Doctrine of Equitable Estoppel*, Proceedings of the Tax Institute, Univ. of So. California School of Law (1954), 481, 504–517.

[3] "The Tax Court in redetermining a deficiency of income tax for any taxable year or of gift tax for any calendar year shall consider such facts with relation to the taxes for other years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other year has been overpaid or underpaid." La sec. 57(h) enmendada corresponde al pie de la letra con la sec. 272(g) de la nueva Ley de Contribuciones sobre Ingresos, núm. 91, aprobada en 29 de junio de 1954. La sec. 504 de la Ley de Rentas Internas de 1942, c. 619, 56 Stat. 798, 957, cambió el nombre del *Board of Tax Appeals* a *The Tax Court of the United States*. Pero la sec. 504(b) dispuso que este cambio no tendría ningún efecto sobre la jurisdicción, los poderes y los deberes de dicha entidad.

los Estados Unidos, interpretando la sec. 272 (*g*) antes mencionada, resolvió que:

"La falta de jurisdicción de la Junta (de Apelaciones Contributivas) para aplicar la doctrina de la reconvención (*equitable recoupment*) en este caso surge claramente de las disposiciones estatutarias. El Comisionado tasó una deficiencia sólo para el año de 1936 y fué de esa deficiencia que la parte apelada solicitó revisión. La Junta, por tanto, sólo tenía jurisdicción para redeterminar la deficiencia de 1936, lo cual es distinto de cualquier pago excesivo o pago insuficiente en cualquier año anterior o subsiguiente . . . La redeterminación de la contribución adeudada para el año de 1936 no dependía de una tasación de deficiencia anterior o de un pago excesivo anterior. Igualmente, ni el hecho de que el pago excesivo anterior ya no podía ser reintegrado ni tampoco el hecho de que el pago en exceso excedía del monto de la deficiencia, tenía pertinencia alguna respecto a la determinación de la cantidad correcta de contribución adeudada para el año 1936. El apelado, en otras palabras, trató de usar el pago en exceso que hizo en 1935, no como una ayuda para redeterminar la deficiencia del año 1936, sino como una defensa afirmativa o reconvención contra dicha deficiencia. Esto necesariamente envuelve la determinación de si hubo un pago en exceso durante el año de 1935. Los términos absolutos e inequívocos de la sec. 272 (*g*), sin embargo, colocan dicha determinación fuera de la jurisdicción de la Junta. De ahí que permitir a la Junta aplicar una defensa equitativa, que necesariamente está basada en una determinación ajena a su jurisdicción, sería contrario a la intención explícita del Congreso . . . Hasta que el Congreso no crea conveniente permitir a la Junta que determine la existencia de un pago en exceso o de un pago insuficiente en cualquier año contributivo distinto al año en que se tasó la deficiencia, la Junta tiene que permanecer impotente siempre que la alegación o defensa de la reconvención se base en que la contribución para ese otro año fué pagada en exceso o de menos." (Págs. 420–422.)

Es verdad que el Tribunal Supremo de los Estados Unidos en el referido caso señaló específicamente que "no tenemos que determinar aquí el alcance de la reconvención cuando la misma se alega en un pleito de reintegro de contribuciones en los tribunales que poseen jurisdicción general de equidad."

(Pág. 421.) Esta aclaración se debió únicamente al hecho de que la sec. 272 (*g*) sólo limita la jurisdicción del Tribunal Federal de Contribuciones (antes Junta de Apelaciones Contributivas) y no se aplica a los tribunales de distrito federales, ante los cuales en ciertas circunstancias pueden ventilarse los litigios sobre contribuciones de ingresos bajo la ley federal. Pero en Puerto Rico la sec. 57 (*h*) limita expresamente la jurisdicción del Tribunal Superior, que es el único foro para litigios contributivos, y por ende, la jurisdicción apelativa de este Tribunal Supremo. Tampoco tenemos que resolver aquí si en un pleito de reintegro la sec. 57 (*h*) haría inaplicable la doctrina de la reconvención o "recoupment". Véase 13 L.P.R.A. secs. 261–290; 13 L.P.R.A. sec. 773; Cf. 12 A.L.R. (2d) 815; Mintz y Plumb, *Taxing Income in Years not Realized Under Doctrine of Equitable Estoppel, Proceedings of the Tax Institute,* Univ. of So. Calif. Law School (1954), 481, 504–517.[4]

Desde luego, no estamos dando efecto retroactivo a las disposiciones de la sec. 57 (*h*), según fué enmendada el 8 de octubre de 1954. Dicha sección sencillamente se aplica a todos los casos pendientes al aprobarse la misma. Y el caso de autos todavía se encontraba en trámite de apelación cuando

---

[4] Los problemas que han tratado de resolverse a través de la teoría judicial de la reconvención o "recoupment" en verdad requieren acción legislativa. Al respecto, véanse las secs. 1311–1313 del Código Federal de Rentas Internas de 1954. Dichas secciones originalmente aprobadas en 1938, como la sec. 820 de la Ley Federal, no aparecen en nuestra reciente Ley de Contribuciones sobre Ingresos de 1954. Sobre las mismas, véanse: Mintz y Plumb, op. cit. supra, 517 y sigtes.; *Relief from the Statute of Limitations in Tax Cases Under Section 3801,* 40 Va. L. Rev. 773 (1954); Landman, *Tax Relief from the Statute of Limitations,* 5 Tax L. Rev. 547 (1950); Wilkinson, *Mitigation of the Effect of the Statute of Limitations Under the Income Tax Laws,* 27 Tax L. Rev. 818 (1949); Maguire, Surrey and Traynor, *Section 820 of the Revenue Act of 1938,* 48 Yale L. J. 509, 719 (1939); Kent, *Mitigation of the Statute of Limitations in Federal Tax Cases,* 27 Calif. L. Rev. 109 (1939); Seidman, *Section 820 of the Revenue Act of 1938,* 17 Taxes 341 (1939); *Section 820: Equity in the Administration of the Revenue Act,* 39 Col. L. Rev. 460 (1939); *Estoppel and Recoupment in Federal Taxation After the Revenue Act of 1938,* 52 Harv. L. Rev. 300 (1938).

la Legislatura aprobó la Ley núm. 9 de 1954.([5]) Por otro lado, no existe ningún obstáculo constitucional que nos impida aplicar aquí la restricción que impuso el poder legislativo a la autoridad de los tribunales de Puerto Rico a través de la referida sec. 57(h). El Artículo V de la Constitución del Estado Libre Asociado de Puerto Rico claramente reserva a la Asamblea Legislativa la facultad de determinar la autoridad o competencia de los tribunales, con la salvedad de que el Tribunal Supremo es "el tribunal de última instancia en Puerto Rico" y además tiene autoridad para "conocer en primera instancia de recursos de hábeas corpus y de aquellos otros recursos y causas que se determinen por ley". Véase 1 L.P.R.A. págs. 205–209. Además, los debates en la Convención Constituyente de Puerto Rico no permiten ninguna duda sobre este particular. Véase Diario de Sesiones de la

---

([5]) Véase *Suárez* v. *Tugwell*, 67 D.P.R. 180, 184–185 (1947). Cf. *Sunland Biscuit Co.* v. *Junta de Salario Mínimo*, 68 D.P.R. 371 (1948). En *Baltimore & P. R. R. Co.* v. *Grant*, 98 U. S. 398, 401–402, 25 L. Ed. 231, 232–233 (1879), la Corte Suprema de los Estados Unidos resolvió que: ". . . si la ley que confiere jurisdicción se deroga sin hacer salvedad en cuanto a los casos pendientes, éstos caen junto con la ley . . . La ley tiene sin duda efecto prospectivo. No revoca ni anula lo que se haya resuelto bajo la ley anterior. No destruye ningún derecho adquirido. No deja sin efecto ninguna sentencia que ya este Tribunal haya dictado . . . pero una parte no tiene derecho adquirido alguno a una apelación . . . Ese privilegio una vez concedido, puede revocarse y si se revoca, todos los casos pendientes en el tribunal de apelación se paralizan exactamente en la etapa y momento en que se encuentran cuando se aprueba la ley derogatoria, a menos que no se disponga lo contrario específicamente . . ." Véase además *In re Hall*, 167 U. S. 38, 42 L. Ed. 69 (1899) ; *Stephan* v. *United States*, 319 U. S. 423, 87 L. Ed. 1490 (1943) ; 21 C.J.S. *Courts*, sec. 95 y los casos allí citados. Conviene señalar que obviamente no es aplicable en este caso el art. 386 del Código Político que dispone: "La derogación de cualquier estatuto por la Asamblea Legislativa no tendrá el efecto de exonerar o eximir de ninguna pena, embargo, confiscación o responsabilidad en que se hubiere incurrido bajo dicho estatuto, a menos que la ley derogatoria así lo dispusiere expresamente, y se tendrá por vigente dicho estatuto, al objeto de sostener la respectiva acción o proceso para exigir el cumplimiento de dicha pena, embargo, confiscación o responsabilidad." Cf. *Puerto Rico Ilustrado, Inc.* v. *Buscaglia*, 64 D.P.R. 914, 954–957 (1945).

Convención Constituyente de Puerto Rico, págs. 178–179, 221–243.(⁶)

*Debe modificarse nuestra sentencia anterior a los fines de permitir la deducción de la pérdida neta que sufrió la sociedad en el año 1940 al computar el ingreso neto distribuíble a los socios en 1941, y, así modificada debe confirmarse la sentencia apelada, devolviéndose el caso al Tribunal Superior, Sala de San Juan, para ulteriores procedimientos no incompatibles con esta opinión.*

El Juez Asociado Señor Belaval concurre con el resultado en cuanto a la modificación de la sentencia apelada a los fines de permitir la deducción de la pérdida neta que sufrió la sociedad en el año 1940 al computar el ingreso neto distribuíble a los socios en 1941, pero disiente en cuanto a lo demás en opinión separada.

---

Opinión separada del Juez Asociado señor Belaval.

Los hechos a ser considerados son los siguientes: el contribuyente no incluyó en su declaración de ingresos correspondiente al año contributivo 1941, ciertos beneficios habidos y no distribuídos, que le correspondían como socio comanditario de la Mercantil Monllor & Boscio, Sucrs., S. en C.; al distribuir dicha sociedad en los años 1942 y 1943 los beneficios habidos durante el año 1941, en las declaraciones de ingresos correspondientes a los años contributivos 1942 y 1943, el contribuyente declaró y pagó los beneficios que debió haber in-

---

(⁶) Véase al respecto: Informe de la Comisión de la Rama Judicial de la Convención Constituyente de Puerto Rico: "Esta sección (la núm. 2 del Art. V) establece la completa unificación de los tribunales de Puerto Rico. La unificación de los tribunales produce, entre otros efectos, la eliminación de problemas técnicos de jurisdicción. El poder legislativo queda, no obstante, facultado para determinar la competencia de los tribunales . . . incluyendo el lugar donde deben ventilarse los litigios". En adición a los casos citados en el escolio 5, véanse también: *Ex parte McCardle*, 6 Wall. 318 (1868), 7 Wall. 506 (1869); *Missouri v. Missouri Pac. Ry. Co.*, 292 U. S. 13, 78 L. Ed. 1087 (1934); Robertson y Kirkham, *Jurisdiction of the Supreme Court of the United States* (Wolfson y Kurland, ed. 1951), págs. 1–3; Frankfurter y Greene, *Labor Injunctions and Federal Legislation*, 42 Harv. L. Rev. 766, 775–777 (1929).

cluído en la declaración de ingresos correspondiente al año contributivo 1941.

Después de examinar la declaración de ingresos correspondiente al año contributivo 1941, el Secretario de Hacienda le notificó al contribuyente una deficiencia por los beneficios que en dicho año 1941 ha debido distribuir y no distribuyó la Mercantil Monllor y Boscio, Sucrs., S. en C. Alegando que él había declarado y pagado dichos beneficios en las declaraciones de ingresos correspondientes a los años contributivos 1942 y 1943, el contribuyente solicita que se aplique a esta situación de hechos la defensa de la compensación equitativa, (*equitable recoupment*), consagrada por nuestra jurisprudencia en los casos de *González Padín Co.* v. *Tribunal de Contribuciones*, 66 D.P.R. 964 (*Snyder*), (1947), cita precisa a la pág. 969; *Compañía Azucarera* v. *Tribunal de Contribuciones*, 72 D.P.R. 909 (*Todd, hijo*), (1951), cita precisa a las págs. 924–926; véase además *Ronrico Corporation* v. *Tesorero de Puerto Rico*, 77 D.P.R. 411 (*Belaval*), (1954), cita precisa a las págs. 416–419.

Las razones que tuvimos originalmente para denegar la aplicación de dicha defensa al caso de autos fueron las siguientes:

"Para que pueda aplicarse dicha doctrina a este caso, debe surgir de sus hechos que el apelante tiene un crédito a su favor y en contra del gobierno, como consecuencia de haber pagado contribuciones en exceso en los años 1942 y 1943. Luego de esto habría de examinar los hechos para determinar si se ha cumplido con la exigencia de 'una misma transacción'. *González Padín* v. *Tribunal de Contribuciones,* supra. Sin embargo, no creemos que esto último sea necesario. Los hechos incontrovertidos demuestran a lo sumo que el contribuyente pagó contribuciones sobre los beneficios distribuídos por la sociedad en 1942 y 1943 y que parte de esos beneficios los hubo la sociedad en 1941 y no los distribuyó en dicho año. El contribuyente no niega que cuando la sociedad hubo esos beneficios en 1941, él venía obligado a declarar la parte que en los mismos le correspondía y a pagar contribución sobre ellos aun cuando no hubieran sido distribuídos. El Gobierno no adoptó la posición de que tales beneficios no tri-

butaban por el hecho de que no habían sido distribuídos, de suerte que se le pueda considerar inconsistente su actitud posterior al notificar la deficiencia de 1941. Pero el hecho de que la deficiencia esté basada en unos beneficios, habidos y no distribuídos en 1941 y que esos beneficios o parte de ellos tributaron en 1942 y 1943, no implica por sí solo que el contribuyente tenga un crédito contra el Gobierno, si en realidad él no ha demostrado que pagó contribuciones en exceso, en los años 1942 y 1943. Estos años no han estado en controversia ni han sido abiertos por actuación alguna del Tesorero para su investigación, ni los tuvo ante sí la corte a quo. No pueden, pues, reexaminarse todas sus partidas, tanto el ingreso declarado, como las deducciones y exenciones reclamadas, a fin de poder determinar que por razón de haberse incluído en dichos años los beneficios distribuídos por la sociedad durante los mismos, resultaba un pago en exceso, en caso de que esos mismos beneficios tributaran en el año 1941. *Correspondía al contribuyente probar que en los años 1942 y 1943, pagó en exceso, las contribuciones sobre ingresos que por ley venía obligado a pagar. No lo hizo y a falta de tal demostración, no puede invocar la doctrina de reconvención."*

Este caso fué sometido por las partes en virtud de una estipulación de hechos, en cuyo hecho 15, (L7), se estipuló "se acompaña y se hacen formar parte de esta estipulación . . . (*c*) copias de las declaraciones de ingresos rendidas por el querellante Enrique Petrovich Boscio para los años 1941, 1942 y 1943" que "aparecen en este legajo como *exhibits c, d y e*". En virtud de dicha estipulación y exhibits quedaron aceptados por las partes, y por tanto probados para los efectos del litigio, los ingresos realmente declarados en cada uno de los tres años, la fecha de su pago y los conceptos por los cuales se pagaron.

En su oposición a la reconsideración solicitada, el Secretario de Hacienda trata de convencernos que el contenido de las declaraciones de ingresos no constituye prueba. Estamos conformes que esto sería así, si el contribuyente hubiera tratado que se considerara probado determinado hecho, haciendo una simple referencia a la declaración de ingresos. Pero ese no es el caso presente. En este caso las declaraciones de ingresos fueron presentadas como prueba, anotadas

como prueba documental del caso (exhibits), todo mediante estipulación de ambas partes, y por tanto, el contenido de las mismas fué aceptado como prueba.

El caso citado por el Secretario de Hacienda para demostrar que las declaraciones sobre ingresos no constituyen prueba—*The Times Tribune Company* v. *Commissioner of Internal Revenue*, 20 T. C. 449, (*Murdock*), (1953), cita precisa a la pág. 452—, no es de estricta aplicación a este caso, por no constar claramente de la opinión, que el contenido de las mismas fuera expresamente estipulado. Las declaraciones de ingresos se consideran, según lo resuelve el propio caso citado, admisiones contra interés de la parte que las presenta y prueban los hechos que puedan resultar adversos a la parte que las presenta. Cuando se presentan como prueba en virtud de una estipulación, tal interés adverso opera contra ambas partes, pues la admisión del contenido se convierte en prueba admitida y no controvertida, que debe ser considerada como adversa lo mismo para una parte que para la otra. Nada hemos encontrado en la estipulación sometida en este caso que demuestre el propósito de los estipulantes de limitar la recepción de dicha prueba, a un solo hecho específico del contenido. Por tanto, debemos aceptar que la admisión comprende todo lo contenido en dichas declaraciones de ingresos. Además en el hecho 10 de la estipulación se especifican los beneficios desde el año 1940 hasta el año 1943 y en el hecho 14 se establece el por ciento que correspondía a cada socio de dichos beneficios.

A nuestro juicio el contribuyente probó, por así demostrarlo las declaraciones de ingresos presentadas a ese efecto, y los hechos estipulados anteriormente reseñados, que si bien en el 1941 no incluyó los beneficios que debía haber distribuído la mercantil de la cual es comanditario, en el 1942 y 1943, pagó por dichos beneficios.

Las declaraciones de ingresos del contribuyente, correspondientes a los años envueltos en este litigio, son sumamente sencillas: (1) la declaración relativa al año contributivo

1941, presentada conjuntamente por él y su esposa, demuestra dos partidas de ingreso bruto: (*a*) sueldos y bonificaciones de la propia Mercantil Monllor y Boscio: $10,086.82 y (*b*) beneficios de sociedades $227.39 y cuatro partidas de deducción: (*a*) exención personal $2,000, (*b*) crédito por dependientes $1,200, (*c*) pago de contribuciones $90.45, (*d*) donativos $100; (2) la declaración relativa al año contributivo 1942, presentada conjuntamente por él y su esposa, demuestra tres partidas de ingreso bruto: (*a*) $10,900 de sueldos, (*b*) $564 de rentas de casas, (*c*) $4,856.94 de beneficios de sociedades y cinco partidas de deducción: (*a*) exención personal $2,000, (*b*) crédito por dependientes $1,200, (*c*) $29 por depreciación de casas que producen rentas, (*d*) $81.08 por contribuciones pagadas y (*e*) $200 por donativos; (3) la declaración relativa al año contributivo 1943, presentada conjuntamente por él y su esposa demuestra tres partidas de ingreso bruto: (*a*) $13,600 de sueldos, (*b*) $936 por rentas de casas, (*c*) $3,447.11 de beneficios de sociedades y seis partidas de deducción: (*a*) exención personal $2,000, (*b*) crédito por dependientes $1,200, (*c*) $139 por depreciación de casas que producen rentas, (*d*) $116.98 por contribuciones pagadas, (*e*) $502.56 por impuesto de la Victoria; y (*f*) $700 por donativos.

Como se ve, no se trata de un caso, donde la complejidad de los ingresos y las deducciones incluídas, hubiera hecho difícil la tarea del Secretario de Hacienda de imponer deficiencias por otros conceptos contributivos. Como cuestión de realidad, al examinar la declaración de ingresos de 1941, la única deficiencia impuesta por el Secretario de Hacienda, fué la relativa a los beneficios de la sociedad no distribuídos por ésta ni declarados por el contribuyente.

En cuanto a los beneficios distribuídos por la sociedad, como se trata de una misma partida, sobre la cual no hay discusión entre las partes en cuanto a su montante, el hecho que no se incluyera en la declaración de ingresos del 1941 los correspondientes a dicho año, pero se acumularan a los

beneficios distribuídos y declarados de los años 1942 y 1943, lo único que demuestra es una deficiencia a favor del Tesorero por el año 1941 y un sobrepago a favor del contribuyente por esa misma cantidad por los años 1942 y 1943. Este es un hecho admitido por las partes y no necesita ser probado. Por tanto, la deficiencia del 1941 está compensada por el sobrepago de la misma partida durante los años 1942 y 1943, caso típico de la compensación equitativa.

Hasta aquí se trata de una cuestión de prueba, donde cualquiera divergencia de criterio, no alteraría los aspectos doctrinales de la cuestión litigiosa. Mas nuestra opinión original en este caso, parece haber partido del supuesto, que ante una defensa de compensación equitativa presentada por el contribuyente, el Secretario de Hacienda puede proceder a la redeterminación de la total responsabilidad contributiva del contribuyente, como si se tratara de un caso de reintegro. Dicha aserción la contiene las siguientes afirmaciones de nuestra opinión original: "pero el hecho de que la deficiencia esté basada en unos beneficios habidos y no distribuídos en 1941 y que esos beneficios o parte de ellos tributaran en 1942 y 1943, no implica por sí solo que el contribuyente tenga un crédito contra el gobierno, si en realidad él no ha demostrado que pagó contribuciones en exceso en los años 1942 y 1943. Estos años no han estado en controversia, ni han sido abiertos por actuación alguna del Tesorero para su investigación, ni los tuvo ante sí la corte a quo. *No pueden pues reexaminarse todas sus partidas, tanto el ingreso declarado como las deducciones y exenciones reclamadas, a fin de poder determinar que por razón de haberse incluído en dichos años los beneficios distribuídos por la sociedad durante los mismos, resultaba un pago en exceso, en caso de que esos mismos tributaran en el año 1941.*"

Un estudio más detenido de la cuestión litigiosa nos ha convencido que tal criterio debe ser abandonado. En la compensación equitativa, el problema que se presenta no es uno de reliquidación de ingresos, sino uno de identificación de

determinada partida, ya que, tanto el poder impositivo del Estado, como el derecho de reintegro del contribuyente, se encuentran circunscritos por el derecho de prescripción.

Existe una diferencia fundamental, no sólo en los aspectos remediales de la cuestión, sino también en los aspectos sustantivos de la misma, entre una solicitud de reintegro y una defensa de compensación equitativa. El reintegro forma parte de la mecánica de recobro establecida a favor del contribuyente, para devolver a éste cualquier pago en exceso de su deuda contributiva. En una solicitud de reintegro, el contribuyente puede reclamar el exceso pagado en cualquiera de las partidas comprendidas en su declaración de ingresos, siempre que no haya transcurrido el término prescrito por ley para la devolución del exceso, pues se trata de un derecho estatutario que se extingue por prescripción.

Ante una solicitud de reintegro, el anterior Tesorero de Puerto Rico, en virtud de lo que disponía la sec. 64 de nuestra Ley de Contribuciones sobre Ingresos de 1924, antes de ser derogada por la Ley núm. 230 de 10 de mayo de 1949 y reenactada por la Ley núm. 232 de 10 de mayo de 1949, que es la ley aplicable a este caso, estaba obligado, antes de proceder al reintegro del exceso, a redeterminar la total responsabilidad contributiva del contribuyente, no sólo en la declaración de ingresos en la cual se basaba su solicitud, sino en cualesquiera otras declaraciones de ingresos donde pudiera existir un crédito a favor del Estado, que todavía resultara recobrable, con el propósito de acreditar lo pagado en exceso, a cualquiera contribución sobre ingresos o beneficios excesivos o a cualquier plazo de la misma que estuviere vencido: *Figueras v. Secretario de Hacienda*, 78 D.P.R. 44 (*Belaval*), (1955), cita precisa a la pág. 53.

La teoría es que el Estado no debe devolver ninguna cantidad cobrada en exceso, mientras el contribuyente se encuentre adeudando alguna contribución sobre ingresos al Estado, puesto que ello duplicaría, en perjuicio del Estado, la función tanto de imposición como de cobro de la contribución.

La defensa de la compensación equitativa forma parte del sistema de saldo por crédito, establecido a favor del contribuyente, para declarar compensada cualquiera partida anteriormente pagada. En virtud de la defensa de la compensación equitativa, el contribuyente puede reclamar únicamente compensación en las partidas envueltas en la deficiencia notificada, por previo pago de la misma partida en otras declaraciones de ingresos, ya que habiendo prescrito su derecho al reintegro, no podría intentar el recobro de cualesquiera contribuciones pagadas erróneamente. Ante una defensa de compensación equitativa, formulada por un contribuyente, el anterior Tesorero lo único que tenía que determinar, era, si la partida sobre la cual se basaba la deficiencia, había sido declarada, de buena fe, en un año contributivo distinto y realmente pagada por el contribuyente: *Ronrico Corporation* v. *Tesorero de Puerto Rico*, 77 D.P.R. 411 (*Belaval*), (1954), cita precisa a las págs. 416–419. La teoría es, que resulta contrario a la moral y a la economía individual, que el Estado cobre dos veces por un mismo renglón contributivo, si por un error de buena fe en la contabilización de una partida, o por una errónea aplicación de la ley, el contribuyente se equivoca al declarar determinado ingreso en un año distinto a aquel al cual corresponde.

Por estas razones, tanto de procedimiento como de ley sustantiva, es que no se pueden aunar, como si se tratara de una misma cuestión, ni resultan intercambiables, la solicitud de reintegro y la defensa de la compensación equitativa.

El precedente que originalmente aplicamos en la decisión de esta cuestión litigiosa, fué el caso de *Lewis* v. *Reynolds*, 284 U. S. 281, 76 L. Ed. 293 (*McReynolds*), (1932), cita precisa a la pág. 283 U. S., 295 L. Ed. El caso de *Lewis* v. *Reynolds* no puede aplicarse a una solicitud de compensación equitativa como la que presenta este caso, porque, (1) el caso se refiere a una solicitud de reintegro (*refund*) de acuerdo con la sec. 284 de la Ley de Rentas del 1926 federal, relacionada con créditos y reembolsos (*credits and refunds*)—44

Statutes at Large, Part II, Public Laws p. 66—equivalente a la anterior sec. 64 de nuestra Ley de 1924, referente a reintegros, y no se refiere, a la sec. 273 de la Ley de Rentas de 1926 federal—44 Statutes at Large, Part II Public Laws p. 55— relacionada con la notificación de una deficiencia, que es la que da margen a la compensación equitativa, equivalente a la sec. 57 de nuestra Ley de 1924, según enmendada, referente a deficiencias; (2) el caso limita la facultad del Comisionado de Rentas Internas Federal a redeterminar la responsabilidad contributiva del solicitante, dentro de la misma declaración de ingresos en la cual se origina la solicitud de reintegro, y no en otras declaraciones de ingresos referentes a otros años, que es el caso más generalizado de la compensación equitativa,— 10-A Merten's *Law of Federal Income Taxation* 181, sec. 60.11 (ed. de Callaghan and Company de 1948), debido a la mecánica característica del derecho de prescripción contributivo federal.

Sabido es, que en la ley federal, tanto el término para solicitar el reintegro como el término para tasar la contribución e imponer una deficiencia, son idénticos—secs. 322 y 275 de la Ley de Rentas de 1928, aplicables al caso de *Lewis* v. *Reynolds*. Por lo que, se puede dar el caso en la alternativa, que el Comisionado de Rentas Internas, al notificar una deficiencia en los últimos días del término, deje al contribuyente sin derecho a solicitar el reintegro, por haber prescrito tal derecho, o, el contribuyente, al solicitar un reintegro en los últimos días del término, deje al Comisionado sin derecho a notificar una deficiencia, por haber prescrito tal derecho. En ambas circunstancias se ha resuelto, que aunque el derecho de la otra parte afectada esté prescrito, la equidad —*aequitas est aequalitas*—debe intervenir para ponerlas en igualdad de condiciones. Como se ve, basta que una sola parte solicite el remedio en tiempo hábil (*timely*) para que la otra pueda presentar su defensa de compensación equitativa, o denegar el reintegro por reliquidación, aunque estuviera fuera de tiempo hábil (*barred*).

El caso de *Lewis* v. *Reynolds*, es un caso típico de esta situación de derecho. El contribuyente solicitó el reintegro en tiempo hábil, y además se opuso a la reliquidación de su total responsabilidad contributiva, por el fundamento, que el derecho del Comisionado de Rentas Internas Federal a imponer nuevas deficiencias estaba prescrito, de acuerdo con la sec. 277 de la Ley de Rentas del 1926 federal. El Tribunal lo que hizo fué ponerlos en igualdad de condiciones.

La regla del caso de *Lewis* v. *Reynolds*, que parece tan razonable, cuando los términos para solicitar el reintegro y para imponer la deficiencia, que da margen a la compensación equitativa, son idénticos, no resulta tan razonable, cuando dichos términos no son idénticos, como es el caso de Puerto Rico, pues colocan al contribuyente en una situación injusta.

Sabido es que de acuerdo con la sec. 64 (*b*) de nuestra Ley de Contribuciones sobre Ingresos de 1924, antes de ser derogada por la Ley núm. 230 de 10 de mayo de 1949, y reenactada por la Ley núm. 232 de la misma fecha, que es la ley aplicable a este caso, el término para la solicitud de reintegro era de cuatro años, y, de acuerdo con la sec. 60 (*a*) (1) de la misma Ley, según enmendada por la Ley núm. 31 de 12 de abril de 1941, el término para tasar la contribución e imponer la deficiencia, que da margen a la defensa de la compensación equitativa, era de siete años. Por lo que, se puede dar el caso, injusto en la alternativa, que el Secretario de Hacienda, al notificar la deficiencia que da margen a la compensación equitativa, después de los primeros cuatro años del término de imposición que tiene el Secretario, deje al contribuyente sin derecho a solicitar el reintegro por el pago de dicha partida, por haber prescrito el derecho del contribuyente al reintegro, mientras que, el contribuyente al solicitar su reintegro, nunca dejaría al Secretario de Hacienda, sin derecho a notificar la deficiencia que da margen a la compensación equitativa, porque su derecho prescribe tres años más tarde.

El caso aquí sometido a litigación es un caso típico de la segunda situación de derecho. El anterior Tesorero, después de transcurrido el término que tenía el contribuyente para solicitar el reintegro, impuso, en tiempo hábil, una deficiencia, que es la que da margen a la defensa de la compensación equitativa, sobre una partida de beneficios no distribuídos, que debió haber declarado el contribuyente en el 1941 y no declaró hasta los años 1942 y 1943, siguiendo las indicaciones de nuestra propia jurisprudencia, y ahora se opone a que consideremos la defensa de compensación equitativa del contribuyente, por el fundamento, que no habiendo él investigado los años 1942 y 1943, él no ha podido redeterminar la responsabilidad total del contribuyente, para determinar, con relación al examen de todas las partidas de dichos años, si se ha producido un pago en exceso.

De prevalecer la teoría del Secretario de Hacienda, la inequidad sería manifiesta: mientras el Secretario de Hacienda podría redeterminar la responsabilidad contributiva del contribuyente en todas las partidas, el contribuyente sólo tendría derecho a solicitar compensación en la partida envuelta en la notificación de deficiencia; mientras que el Secretario de Hacienda podría evadir la teoría del reposo contributivo que consagra el derecho de prescripción a favor del contribuyente, el contribuyente no podría evadirla; mientras el Secretario de Hacienda podría realizar nuevas imposiciones sobre todos los errores de buena fe cometidos por el contribuyente en la computación de su ingreso, el contribuyente no recibiría crédito por ningún error cometido en las deducciones autorizadas por ley o por cualquier error de inclusión de buena fe en otros años distintos, puesto que está restringido a una sola partida de determinado año contributivo. Es conveniente recordar que nuestra Ley del 1924 no contenía el crédito automático por sobrepago de la ley federal correspondiente, según enmendada.

En este error, tanto de Derecho como de Justicia, incurrimos involuntariamente en nuestra opinión original, al aplicar

a la defensa de compensación equitativa—identificación de una misma partida en diferentes años contributivos—los principios de la solicitud de reintegro—reliquidación de la total responsabilidad contributiva que todavía resulte recobrable, antes de proceder a la devolución del exceso.

La defensa de la compensación equitativa es un diseño del Derecho justo ideado para evitar, que tanto el contribuyente como el Secretario de Hacienda, puedan escudarse detrás del derecho de prescripción, para tomar ventaja el uno del otro. Aunque la defensa no está diseñada para derrotar decisivamente el derecho de prescripción, se aplica para contrarrestar las inequidades que puedan surgir, cuando una parte, por el hecho que la otra esté impedida de defenderse en virtud de la prescripción, trate de ejercitar un derecho de recobro o imposición de contribuciones, que de no impedirlo la prescripción, no resultaría ejercitable. Como se trata de una defensa circunscrita por el derecho de la prescripción, no se puede utilizar para producir cualquier saldo por crédito y por el contrario, está limitada al caso más generalizado de que determinada partida (*item*), cuyo recobro estaría impedido por el derecho de prescripción, haya sido realmente pagada con anterioridad a su demanda.

La Corte Suprema de Estados Unidos en el caso de *Rothensies* v. *Electric Storage Battery Company*, 329 U. S. 296, 91 L. Ed. 296, (*Jackson*), (1946), cita precisa a las págs. 299 U. S., 299 L. Ed., al enfatizar la limitación de la defensa a los casos en que se trate de la misma transacción, se expresó en las siguientes palabras: "la esencia de la doctrina sobre compensación equitativa está establecida en el caso de *Bull* en la siguiente forma: 'la compensación equitativa', por su naturaleza, es una defensa que se origina en algún aspecto de la transacción sobre la cual la acción del demandante se basó . . . . nunca se ha pensado permitir que una transacción quede saldada por otra transacción, sino permitir, que *la transacción comprendida en la reclamación, sea examinada en todos sus aspectos, para que la decisión que se rinda*

*haga justicia, después del examen en su totalidad, de la trans-*
*acción envuelta."*

Convenimos que el uso, un poco arbitrario, que se hizo de dicha defensa por los tribunales federales, ha podido deso-rientar al estudioso—compárese, por ejemplo, el caso de *Bull* v. *United States*, 295 U. S. 247, 79 L. Ed. 1421, (*Roberts*), (1935), cita precisa a las págs. 260–262 U. S., 1427–1428 L. Ed.—compensación de lo pagado por concepto de contri-bución sobre herencia con lo adeudado por concepto de con-tribución sobre ingresos en una misma transacción con el caso de *Electric Storage Battery Company* v. *Rothensies*, 152 F.2d 521, (*Goodrich*), cita precisa a las págs. 523 y 534,— compensación de lo pagado por concepto de arbitrios con lo adeudado por concepto de contribución sobre ingresos, en dos distintas transacciones.

El caso de *Rothensies* v. *Electric Storage Battery Com-pany*, 329 U. S. 296, 91 L. Ed. 296, (*Jackson*), (1946), cita precisa a las págs. 300–303 U. S., 299–301 L. Ed. tuvo los siguientes efectos benéficos para el mejor entendimiento del caso de justicia: (1) restableció el principio que la defensa de compensación equitativa sólo se concedía cuando se trataba de la misma partida (*item*) u operación (*transaction*), tanto por un error en la aplicación de la ley contributiva, con rela-ción a determinado cuerpo de bienes, como por un error en la clasificación o determinación del ingreso sujeto a tributación.

(2) Restableció, asimismo el principio, que la defensa de compensación no estaba ideada para anular los efectos de la prescripción en forma genérica, sino dentro de la especialidad de la "misma transacción", única forma de evadir el impacto de la prescripción, expresándose en los siguientes términos: "sería más que intolerable, por lo menos el Congreso lo ha considerado como aconsejable, tener un sistema contributivo de ingresos, bajo el cual nunca llegaría el día, donde la deuda contributiva quedaría saldada definitivamente y que reque-riría, tanto del contribuyente como del gobierno, estar siempre dispuestos a presentar comprobantes, producir prueba, esta-

blecer valores y reproducir todos los detalles de la contienda contributiva. Por esto, el derecho de prescripción es indispensable, tanto como principio de razonabilidad que como principio para la administración práctica de una política contributiva sobre la renta . . . . Cuando la prescripción se aplica al derecho contributivo, algunas veces el contribuyente percibe su beneficio y otras veces lo percibe el gobierno. Se puede señalar lo mismo un mayor rigor para el contribuyente que una pérdida de rentas para el Estado. Estos extremos suelen tentar las nociones de derecho justo del juez e inducirlo a encontrar las maneras de remediar la situación en cada caso. Pero si aprobáramos la doctrina de la compensación equitativa, tal y como se ha aplicado en este caso, estaríamos minando seriamente el derecho de prescripción en cuestiones contributivas . . . . *Que reclamaciones muertas por tanto tiempo, puedan resucitar bajo dicha doctrina, es suficiente para demostrar la amenaza que tal doctrina representa para el derecho de prescripción . . .*" (págs. 301–303 U. S., 300–301 L. Ed.)

(3) Indujo al Congreso de los Estados Unidos, a fijar legislativamente, las normas equitativas que habían adoptado los tribunales norteamericanos al aplicar la defensa de la compensación equitativa.

Se ha sugerido la posibilidad que la sec. 3801 (*b*) del Código de Rentas Internas Federal de 1939 fuera incorporada al estatuto contributivo federal para limitar el uso equitativo de la compensación equitativa. No hay tal cosa. El verdadero alcance de la intención legislativa al adoptar tal remedio, se encuentra claramente expresado, en el siguiente informe del Subcomité de la Cámara de Representantes de Estados Unidos: "Vuestro subcomité ha considerado los problemas y abusos, que han surgido en la administración de las leyes de contribuciones, como resultado de la operación y efecto del estatuto de prescripción. Un gran número de los litigios bajo las leyes de contribuciones tratan del año al cual corresponden las ganancias y deducciones. En ninguno de estos casos, hay

duda sobre el hecho, que la partida sea tributable o deducible. El Comisionado afirma que una partida debe ser incluída en el ingreso bruto de un año en particular, mientras el contribuyente sostiene que debe ser tributable en un año distinto —pero los dos están de acuerdo en que la partida forma parte del ingreso bruto. Asimismo, los contribuyentes frecuentemente reclaman deducciones que el Comisionado niega, porque él cree, que aunque estas deducciones están permitidas bajo la ley de contribuciones, deben de ser deducidas en un año distinto. El efecto de la ley de prescripción es el factor causante en gran parte de esta litigación. De ordinario, el haber transcurrido el término que señala el estatuto para un año determinado, evita ajustes para este año, y las partes, por tanto, se sienten obligadas a litigar la cuestión, a los efectos de obtener una determinación judicial señalando el año preciso en el cual la partida debe incluirse. Si la aplicación de la ley de prescripción fuera modificada en esos casos, con el fin de permitir un ajuste satisfactorio para el año que ha prescrito, la principal razón para esa litigación desaparecería. En adición a la existencia de esa litigación innecesaria, las decisiones bajo este asunto, a menudo permiten a los contribuyentes, o al Comisionado, obtener una doble ventaja, asumiendo en un año una posición diferente de la tomada en otro, con relación al cual, el período de prescripción ha transcurrido, de manera que el ajuste de la deuda contributiva para el año más antiguo, sea imposible.

"El único propósito de esta ley de prescripción es el de evitar la litigación de reclamaciones caducas, no para ser usado en obtener una doble ventaja, ya sea por doble deducción o por doble tributación, que no estén de conformidad con sus propósitos fundamentales.

"Vuestro subcomité cree que la legislación para eliminar las injusticias e inequidades que surgen de la operación del estatuto de prescripción ya descrita, sería deseable. Se recomienda por tanto (recomendación número 48), que la legislación apropiada para solucionar este problema sea prepa-

rada." Seidman's *Legislative History of Federal Income Tax Laws*—1938–1861—pág. 144 (ed. de Prentice Hall de 1938). Como se ve, la intención legislativa fué adoptar como un remedio en ley, las normas equitativas formuladas por los tribunales norteamericanos.

Se ha sugerido, asimismo, la posibilidad, que si se permite a un contribuyente solicitar compensación por cualquiera partida erróneamente incluída en un año distinto a aquél al cual pertenece, se podría prestar a que un contribuyente, que durante un año ha tenido ingresos cuantiosos, deje de declararlos ese año, e incluirlos en otro, para pagar menos contribuciones, y posteriormente, solicitar compensación por la partida erróneamente incluída. Como se ve, se trata de un obvio caso de fraude, donde la compensación equitativa no tendría ninguna función que cumplir, puesto que en casos de fraude o de evasión contributivos, el término prescriptivo no rige, sec. 61 de la Ley núm. 74 de 6 de agosto de 1925—13 L.P.R.A. 617, sec. 779—, y por tanto, el Secretario de Hacienda en cualquier momento, podría proceder a la redeterminación de la responsabilidad contributiva total, sin estar sujeto a la sola partida o a la misma transacción.

El derecho de prescripción, tanto para las acciones sobre reintegro de lo pagado en exceso, como para la tasación de nuevas deficiencias, es la norma utilizada por nuestra propia Legislatura para poner fin a la litigación contributiva y consagrar el reposo contributivo. No es saludable para el bienestar del contribuyente ni para el saneamiento del Tesoro público, una relitigación continua de la deuda contributiva. El crédito financiero contemporáneo no resiste esta falta de estabilidad, que representan las acreencias potenciales, tanto en la economía nacional como en la economía individual. La deuda contributiva no constituye una excepción del principio económico del saneamiento. La política legislativa, por razones económicas, que a veces resultan ultra-jurídicas, ha sido fijar un término, al vencimiento del cual, lo mismo el Estado que el ciudadano, queda libre de toda responsabilidad ulterior.

Las defensas en ley o en equidad que traten de revivir estas acreencias potenciales, tienen que tener en mente la política legislativa del reposo contributivo.

En el caso de nuestra Ley de Contribuciones sobre Ingresos de 1924, la diversidad de los términos—de cuatro años el término para solicitar el reintegro y de siete años el término para tasar nuevas deficiencias—hace aconsejable extender el término del contribuyente para presentar su defensa de compensación equitativa hasta el límite que tenía el anterior Tesorero para tasar nuevas deficiencias. Esta fórmula de ley no escrita, encuentra apoyo en la nueva forma legislativa de nuestra Ley de Contribuciones sobre Ingresos de 1954, donde la Asamblea Legislativa de Puerto Rico ha igualado, tanto el término del contribuyente para solicitar el reintegro como el término del Secretario de Hacienda para tasar nuevas deficiencias en situaciones normales, (véase secs. 322 (b) y (1) y 275 (a)).

En cuanto a la Ley del 1924 se refiere, en la misma forma que resultaría contrario a la teoría del reposo contributivo, permitirle a un contribuyente, cada vez que el anterior Tesorero le notificara una deficiencia, traspasar el límite prescriptivo que tenía el anterior Tesorero para tasar nuevas deficiencias, en busca de cualesquiera acreencias que pudiera tener contra el Estado, a los efectos de presentar su defensa de compensación equitativa, también lo resultaría, permitirle al actual Secretario de Hacienda, cada vez que un contribuyente presente una defensa de compensación equitativa, traspasar el límite prescriptivo en busca de nuevas deficiencias. Como bien se ha dicho, tal actuación significará que en todo momento se estaría investigando toda la historia contributiva de todo contribuyente.

Sin embargo, ese es el efecto práctico de nuestra opinión original en el presente caso. En este caso, la declaración de ingresos del contribuyente correspondiente al año contributivo 1941 fué recibida en el Negociado de Contribuciones sobre Ingresos el día 13 de abril de 1942. Desde dicha fecha, el

anterior Tesorero tenía siete años para notificar su deficiencia por cualquiera omisión de ingresos. Por la forma en que se ha planteado ante nos el problema, tenemos que asumir, que como no se trata de una declaración fraudulenta, el contribuyente renunció expresamente el término prescriptivo durante la investigación del Tesorero, pues la notificación de deficiencia con relación al año 1941 referente a ciertos beneficios habidos y no distribuídos, la hizo el anterior Tesorero el día 29 de junio de 1950; ante esta deficiencia, el contribuyente formuló la defensa, y a mi juicio lo probó, que dichos beneficios los declaró en las declaraciones de ingresos correspondientes a los años 1942 y 1943 y pagó por ellos.

Ante nos, en reconsideración, el actual Secretario de Hacienda alega, que como él todavía no ha investigado los años 1942 y 1943 no se debe considerar la defensa de la compensación equitativa. Si ésta afirmación fuera suficiente para derrotar el derecho del contribuyente a tal defensa, tendríamos que llegar a la conclusión que la misma quedaría sujeta a la voluntad del Secretario. Nuestra opinión original, a mi juicio, confundiendo la solicitud de la compensación equitativa con la solicitud de reintegro, parece estar conforme con la teoría que hasta que el Secretario de Hacienda no investigue dichos años y se reexaminen todas las partidas correspondientes a dichos años, "a fin de poder determinar que por razón de haberse incluido en dichos años los beneficios distribuídos por la sociedad durante los mismos, resultaba un pago en exceso", no se puede considerar la defensa de la compensación equitativa. Ya hemos visto que el caso de *Lewis* v. *Reynolds* no puede ser aplicado a una situación como esta, y que después del caso de *Rothensies* v. *Electric Storage Battery Company*, la compensación sólo puede darse sobre la misma partida, y el efecto de prescripción sobre todo este asunto.

Sin embargo, a pesar de que conforme a la sec. 60 (a) (1) de nuestra Ley de Contribuciones sobre Ingresos del 1924, que es la ley aplicable al caso, el Secretario de Hacienda no

podría hoy imponer ninguna deficiencia por los años 1942 y 1943, por haber transcurrido en exceso los siete años después de la radicación de las declaraciones de ingresos, su derecho al reexamen de todas las partidas se antepone al derecho de prescripción del contribuyente, y se revive potencialmente una hipotética acreencia del contribuyente, para derrotar su defensa a la compensación equitativa. Por la enumeración de las partidas de ingreso y de deducción de los tres años envueltos en este asunto, que hemos hecho anteriormente, se puede ver cuan poco realista resulta la solución que se le ha dado a este caso. Tal vez existan casos complejos, donde el mecanismo de la contabilidad de arrastre o la concatenación matemática de ciertos hechos anteriores, nos obligara a adoptar una actitud distinta, guiados por el criterio flexible que impone todo buen sentido jurídico, pero indudablemente, la simplicidad de los hechos aquí envueltos, no nos autoriza a ello.

En cuanto a la posibilidad que la sec. 57 ($h$) de nuestra Ley de Contribuciones sobre Ingresos de 6 de agosto de 1925, según quedó reenactada por la Ley núm. 9 de 8 de octubre de 1954, que es actualmente la sec. 272 ($g$) de nuestra Ley de Contribuciones sobre Ingresos de 1954, resulte aplicable al caso de autos, y por tanto, pueda haber limitado la autoridad del Tribunal Superior, al considerar una deficiencia en determinado año contributivo, conceder una defensa de compensación equitativa, por no tener facultad "para resolver si la contribución para cualquier otro año contributivo ha sido pagada en exceso o de menos", es bueno recordar, que el Tribunal Superior de Puerto Rico es un Tribunal de Primera Instancia, en virtud de las disposiciones de la sec. 13 ($a$) (2) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 24 de julio de 1952, y por lo mismo, un tribunal con jurisdicción general en equidad, al contrario de lo que resultaba ser la Junta de Apelaciones Contributiva federal, —cuando se falló el caso de *Commissioner of Internal Revenue* v. *Gooch Milling & Elevator Company*, 320 U. S. 418, 88 L. Ed. 139, (*Murphy*), (1943), cita precisa a las págs.

420 U. S., 142 L. Ed.,—que sólo constituía "una agencia independiente de la rama ejecutiva del Gobierno": 26 U.S.C.A. 456, sec. 1100, (ed. de *West Publishing Co. and Edward Thompson Company* de 1955)´, *Commissioner of Internal Revenue* v. *Gooch Milling & Elevator Company*, supra, cita precisa a la pág. 420, 142 L. Ed. Sabido es que una agencia de la rama ejecutiva del Gobierno, al realizar una función pública, no tiene ninguna otra autoridad que no sea la que la concede el propio estatuto, mientras que un tribunal tiene además de las conferidas por ley, todas las facultades que le conceda la Constitución y todas las que resulten inherentes a la propia función judicial. El propio caso de *Commissioner of Internal Revenue* v. *Gooch Milling & Elevator Company*, supra, establece la distinción de que estamos hablando.

Es muy dudoso, de acuerdo con el texto de la Sección 2 del Artículo V de la Constitución del Estado Libre Asociado de Puerto Rico, referente al Poder Judicial, que la Asamblea Legislativa de Puerto Rico pueda restringir la jurisdicción de los Tribunales en Puerto Rico, entendiéndose como jurisdicción, la potestad para actuar como Tribunales en Ley o en Derecho-equidad. La Asamblea Legislativa podrá crear nuevos tribunales, suprimir los ya existentes, con excepción del Tribunal Supremo, determinar sobre qué asuntos deberá conocer cada tribunal y la forma como deben estar organizados dichos tribunales, pero en cuanto a su potestad para actuar como Tribunal en Ley o Tribunal en Equidad, la misma está concedida directamente por nuestra Constitución. De forma que, los casos anteriores de nuestra jurisprudencia, sobre la autoridad de la Asamblea Legislativa para dejar sin efecto la jurisdicción de nuestros tribunales en determinados casos, no debe preocuparnos mucho. Tampoco debe preocuparnos la jurisprudencia federal al mismo efecto, puesto que, parte de la base, de una situación constitucional distinta.

En cuanto a la forma como está reenactada la anterior sec. 57(*h*) de nuestra Ley de Contribuciones sobre Ingresos del 1924 por la Ley núm. 9 de 8 de octubre de 1954, y redacta-

da la actual sec. 272 (*g*) de nuestra Ley de Contribuciones sobre Ingresos de 1954, tampoco debe preocuparnos mucho. Se trata de un simple caso de traslación a nuestro Derecho de una disposición federal idéntica, sin que nuestro legislador se percatara de la diferencia que existe entre los organismos que debían aplicarla, ya que en el caso federal, la misma debe ser aplicada por una agencia ejecutiva que completa el trámite de la imposición de contribuciones, mientras que en el caso puertorriqueño, la misma tendría que ser aplicada por un tribunal de jurisdicción general, cuya facultad para actuar posiblemente no pudiera ser restringida por la Asamblea Legislativa de Puerto Rico, según ya hemos visto.

He estudiado el posible efecto retroactivo de la sec. 57 (*h*) anterior y de la actual sec. 272 (*g*) de nuestro último estatuto contributivo, sobre deficiencias impuestas de acuerdo con las disposiciones de nuestra Ley de Contribuciones sobre Ingresos de 1924. Nada hemos encontrado en la Ley núm. 9 de 8 de octubre de 1954, ni en nuestra Ley núm. 91 de 29 de junio de 1954 de Contribuciones sobre Ingresos, que demuestre el propósito del legislador, de disponer expresamente la retroactividad de dichas leyes. Por tanto el art. 3 del Código Civil de Puerto Rico que dispone: "las leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario; en ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior", puede aplicarse como autoridad contraria a la retroactividad.

He examinado asimismo la cuestión de si, por tratarse de una posible cuestión de procedimiento, tal retroactividad resultaría implícita como una cuestión de interés público. Estamos advertidos que la mejor teoría moderna es considerar a cualquiera regla de procedimiento como una cuestión mixta de procedimiento y de ley sustantiva, pues la diferencia no es fácil de establecer. La pregunta que debemos formularnos es la siguiente: el cambio en la forma de pedir, que es el remedio, ¿altera la sustancia del derecho pedido, que es la

declaración, suficiente en derecho o en equidad, para la liberación del deber legal requerido? Si no la altera, estamos ante una cuestión de procedimiento; si la altera, estamos ante una cuestión de ley sustantiva.

Partiendo de la base que la sec. 272(g) de nuestra Ley de Contribuciones sobre Ingresos de 1954, haya pretendido eliminar un remedio, y no la facultad del Tribunal Superior para actuar, notamos que en nuestra ley no se ha incorporado la sec. 3801(b) del Código de Rentas Internas Federal, que según ya hemos visto, es la declaración legislativa, como disposición legal, de los principios de la jurisprudencia federal sobre compensación equitativa. No hay duda que la Asamblea Legislativa puede abolir unos remedios para imponer otros. Pero lo que no puede es abolir todos los remedios al mismo tiempo, porque ya esto intervendría con la facultad para actuar, y estaríamos ante un caso de inconstitucionalidad.

Es indudable que en el caso de la compensación equitativa, estamos ante una defensa, que de abrogarse, afectaría decisivamente el derecho equitativo a que se considere compensada una partida anteriormente pagada. Lo formal, lo extrínseco es la denominación procesal "defensa". Lo sustantivo, lo intrínseco, es el derecho equitativo que nadie debe ser obligado a pagar dos veces por una misma deuda. Siendo esto así, es nuestro deber aplicar la regla universal de la prospectividad, consagrada por nuestro Código Civil.