Voto particular disidente emitido por el
Juez Presidente Señor Hernández Denton, al cual se une la Jueza Asociada Señora Fiol Matta.
Disentimos enérgicamente del curso de acción seguido por cinco Jueces de este Tribunal al declarar inconstitucional esencialmente toda la Ley Núm. 18-2013 (Ley Núm. 18), aprobada por la Legislatura en virtud de la facultad que la Constitución le asignó para modificar la competencia del Tribunal Supremo. La Resolución que se emite para anular una acción legislativa no solo es innecesaria y a destiempo, sino que trastoca los principios constitucionales más básicos de nuestro sistema democrático al provocar un desbalance entre las ramas de Gobierno. El proceder mayoritario representa un golpe judicial a la separación de poderes según una alegada defensa del acceso a la justicia, principio cardinal que no está en juego en esta ocasión.
Lo único que procede en esta etapa de los procedimientos es denegar sin más los recursos de certificación intrajurisdiccional presentados por las partes demandantes en los casos sobre la impugnación de constitucionalidad de las leyes de retiro. Solo así cumplimos con nuestra función judicial de respetar la Ley Núm. 18, que a todas luces es constitucional de su faz. No es genuino evadir esta función bajo el pretexto de defender el acceso a la justicia. Sin embargo, concurrimos con denegar el recurso, pues así las partes tendrán la oportunidad de presentar la prueba y sus argumentos de derecho en el foro de primera instancia.
No debemos utilizar nuestro poder como jueces y juezas del Tribunal Supremo para transferir a este Foro las incomodidades o disgustos suscitados por las actuaciones de la Asamblea Legislativa que, gústenos o no, se han conducido conforme a la Constitución. Luego del cambio reciente en *667 los comicios electorales, la decisión emitida hoy se aparta convenientemente del pronunciamiento esbozado en Yiyi Motors, Inc. v. E.L.A., 177 DPR 230, 287 (2009), sobre el efecto del proceso electoral en la “marea judicial”. Por nuestra parte, hemos sido firmes en que la interpretación constitucional no puede estar sujeta a los vaivenes de las “mareas” de nuestro ordenamiento democrático.
I
Los tres recursos consolidados tratan sobre demandas en las que se solicita que se declare inconstitucional la Ley Núm. 3-2013 (Ley Núm. 3) sobre la Reforma de Retiro. Tras instar las mismas, las partes demandantes acudieron ante el Tribunal Supremo mediante sendas peticiones de certificación intrajurisdiccional. Antes de presentarse estas solicitudes, se aprobó y entró en vigor la Ley Núm. 18, la cual, en lo pertinente a los casos que nos ocupan, modificó la competencia de este Tribunal para atender peticiones de certificación intrajurisdiccional provenientes del Tribunal de Primera Instancia.
Fundamentándose en dicha legislación, las partes demandadas solicitaron la desestimación de las referidas peticiones, al entender que este Tribunal no tenía jurisdicción para atenderlas. Las partes demandantes se opusieron a la desestimación. Todas presentaron sus respectivas réplicas y dúplicas sobre este asunto.
II
Antes de la aprobación de la Ley Núm. 18, la Ley de la Judicatura de 2003, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24s (Ley de la Judicatura), otorgó al Tribunal Supremo la facultad de expedir discrecionalmente el auto de certificación intrajurisdiccional, motu proprio o a solicitud de parte, para atender un asunto pendiente ante cualquiera de los tribunales de inferior *668 jerarquía. Esto, cuando se planteara la existencia de un conflicto de intereses entre decisiones previas del Tribunal de Apelaciones, cuestiones noveles de derecho o asuntos de alto interés público que involucraran una cuestión constitucional sustancial.
No obstante, la Ley Núm. 18 modificó la competencia original y apelativa del Tribunal Supremo. En lo pertinente a las solicitudes de certificación intrajurisdiccional, enmendó la Ley de la Judicatura y las Reglas de Procedimiento Civil, 32 LPRA Ap. V. Como resultado, el Art. 3.002(f) de la Ley de la Judicatura ahora dispone lo siguiente:
[m]ediante auto de certificación, a ser expedido discrecionalmente, cuando medie solicitud de ambas partes, podrá traer inmediatamente ante sí para considerar y resolver cualquier asunto pendiente ante el Tribunal de Primera Instancia cuando se plantee la existencia de un conflicto entre decisiones previas del Tribunal de Apelaciones, se planteen cuestiones noveles de derecho o se planteen cuestiones de alto interés público que incluyan cuestión constitucional sustancial al amparo de la Constitución del Estado Libre Asociado de Puerto Rico o de la Constitución de Estados Unidos. Art. 1 de la Ley Núm. 18-2013.
Como vemos, para que este Tribunal pueda expedir un recurso de certificación de un caso pendiente ante el foro primario, este tiene que ser solicitado por todas las partes y debe cumplir además con una de las tres características señaladas. De lo contrario, no podemos ejercer nuestra jurisdicción en ese momento. Como los recursos ante nos no cumplen con ninguno de estos requisitos, no tenemos jurisdicción para atenderlos en esta etapa de los procedimientos.
Sin embargo, una mayoría de este Tribunal resuelve que tenemos jurisdicción en estos casos, puesto que declara inconstitucionales de su faz los Arts. 1 y 2 de la Ley Núm. 18.(1) Para ello, viola nociones básicas sobre justiciabilidad *669 y normas prudenciales de autolimitación judicial. Peor aún, su análisis constitucional es errado en Derecho. Veamos.
A. Justiciabilidad y normas de autolimitación judicial
Los tribunales podemos evaluar únicamente casos justiciables. E.L.A. v. Aguayo, 80 DPR 552 (1958). Un asunto no es justiciable en la medida en que no presente un caso o controversia. Id. Por ello, los tribunales sólo debemos intervenir en controversias reales y vivas. Id. Al respecto, hemos expresado que “el principio de justiciabilidad como autolimitación del ejercicio del poder judicial responde en gran medida al papel asignado a la Judicatura en una distribución tripartita de poderes, diseñada para asegurar que no intervendrá en áreas sometidas al criterio de otras ramas de gobierno”. Fund. Surfrider y otros v. A.R.Pe., 178 DPR 563, 571 (2010), citando a Com. de la Mujer v. Srio. de Justicia, 109 DPR 715, 721 (1980). Esta doctrina exige a los tribunales “preguntarse y evaluar si es o no apropiado entender en un determinado caso, mediante un análisis que les permite ejercer su discreción en cuanto al límite de su poder constitucional”. Smyth, Puig v. Oriental Bank, 170 DPR 73, 76 (2007).
Para determinar si una controversia es justiciable se debe evaluar si: (1) es tan definida y concreta que afecte las relaciones jurídicas entre las partes que tienen un interés jurídico antagónico; (2) es real y sustancial y permite un remedio específico mediante una sentencia de carácter concluyente, y (3) es propia para una determinación judicial, a diferencia de una disputa de carácter hipotético o abstracto. E.L.A. v. Aguayo, supra, págs. 583—584. Por lo tanto, no se considera justiciable la controversia en la cual se busque resolver una cuestión política o una de las partes no ostente legitimación activa; también cuando hechos posteriores al comienzo del pleito la convierten en académica, *670 las partes buscan obtener una opinión consultiva o se promueve un pleito que no está maduro. Noriega v. Hernández Colón, 135 DPR 406, 421-422 (1994).
Además del principio de justiciabilidad, las normas de autolimitación judicial sirven de guía para situaciones en las que se solicita a un tribunal evaluar la validez constitucional de una medida legislativa. Estas normas disponen que un tribunal: (1) no juzgará la constitucionalidad de una ley en un proceso no adversativo; (2) no decidirá una cuestión constitucional antes de que sea necesario hacerlo; (3) no formulará una norma constitucional más amplia que la que requieran los hechos del caso; (4) no juzgará una cuestión constitucional adecuadamente sometida, si también se somete un fundamento de otra índole que permita disponer del caso; (5) no juzgará la validez de una ley a instancia de quien no puede probar que su aplicación le causa daños; (6) no juzgará la validez de una ley a instancias de quien se ha valido de sus beneficios; (7) cuando se cuestione la validez de una ley, aun cuando se suscite una duda seria sobre su constitucionalidad, primero decidirá si hay una interpretación razonable que permita soslayar la cuestión constitucional, y (8) no entenderá en una cuestión constitucional si los autos no son adecuados para hacer una determinación de esa índole. E.L.A. v. Aguayo, supra, pág. 596.
Como señalamos anteriormente, las partes demandantes impugnaron en el foro primario la constitucionalidad de la Ley Núm. 3-2013. Posteriormente, presentaron sendas peticiones de certificación ante este Foro. El Estado solicitó la desestimación de las peticiones por entender que la Ley Núm. 18 privó a este Tribunal de jurisdicción para certificar estos asuntos. Luego, las partes presentaron varios escritos. En dos de las solicitudes, se impugnó la constitucionalidad de la Ley Núm. 18.
Al acoger este planteamiento y declarar inconstitucionales los Arts. 1 y 2 de la Ley Núm. 18, una mayoría de esta Curia ignora por completo los principios de justiciabilidad y las normas de autolimitación judicial aplicables. *671 Por un lado, se excede en su análisis de la controversia que tiene ante su consideración y, por el otro, resuelve motu proprio controversias que no fueron planteadas por las partes ni existen en el caso.
En esta etapa de los procedimientos, la única controversia que este Tribunal tiene que resolver es si proceden las certificaciones presentadas. Al contestar en la negativa, el Tribunal estaba impedido de evaluar y decretar la ineonstitucionalidad de la Ley Núm. 18. No obstante, aun partiendo de la premisa errónea de que el Tribunal tenía que evaluar la constitucionalidad de esta pieza legislativa a modo de dictum, a pesar de que decidió no expedir los casos, el análisis se debió limitar a la única disposición de la Ley Núm. 18 en controversia, a saber: aquella parte del Art. 1 que trata sobre la competencia del Tribunal Supremo para atender recursos de certificación intrajurisdiccional provenientes del Tribunal de Primera Instancia.
En cambio, una mayoría del Tribunal decreta la inconstitucionalidad de gran parte de la Ley Núm. 18, mediante resolución, sin realizar el más mínimo esfuerzo de encontrar una interpretación que permita reconocer su validez. De esta forma, da al traste con la deferencia que se busca otorgar a la Asamblea Legislativa mediante la doctrina de autolimitación judicial. Por el contrario, decide una cuestión constitucional antes de que sea necesario hacerlo, formula una norma constitucional excesivamente amplia a la que requieren los hechos de los casos, no analiza los variados fundamentos de índole no constitucional que le permitían disponer de las peticiones de certificación y no busca interpretaciones razonables en aras de salvar la constitucionalidad de la Ley Núm. 18.(2) Lo anterior lleva al resultado absurdo de que a pesar que se deniegan los recursos presentados ante este Tribunal, se declara inconstitucional la gran mayoría de una pieza legislativa cuyas disposicio *672 nes —con excepción de un solo párrafo— son inaplicables e irrelevantes para la disposición de las peticiones de certificación. En específico, una mayoría de este Tribunal invalida las disposiciones de la Ley Núm. 18 relativas a los recursos de quo warranto, auto inhibitorio, mandamus, certificación intrajurisdiccional de casos ante el Tribunal de Apelaciones, certificación inteijurisdiccional, certiorari sobre asuntos interlocutorios y recurso gubernativo. De un plumazo, aprovecha para declarar inconstitucionales partes de la ley que, aunque no están en controversia, no son de su agrado. Más que un ejercicio válido del poder judicial, este proceder es análogo a una opinión consultiva. Recordemos “que no es función de los tribunales actuar como asesores o consejeros”. Ortiz v. Panel F.E.I., 155 DPR 219, 251—252 (2001), citando a Com. de la Mujer v. Srio. de Justicia, supra, pág. 721.
Al hacer esto, una mayoría del Tribunal también hace caso omiso de la cláusula de separabilidad establecida en el Art. 14 de la Ley Núm. 18, la cual dispone que
[s]i cualquier cláusula, párrafo, subpárrafo, artículo, disposición, sección, inciso o parte de esta Ley fuere declarada inconstitucional por un tribunal competente, la sentencia a tal efecto dictada no afectará, perjudicará ni invalidará el resto de esta Ley. El efecto de dicha sentencia quedará limitado a la cláusula, párrafo, subpárrafo, artículo, disposición, sección, inciso o parte de la misma que así hubiere sido declarada inconstitucional. (Enfasis suplido).
¿Consideró una mayoría del Tribunal este artículo? Cabe destacar que el mismo sigue siendo válido pues sobrevivió al improcedente decreto de inconstitucionalidad.
Eso no es todo. Además de violar nociones elementales sobre justiciabilidad y normas prudenciales de autolimitación judicial, el decreto de inconstitucionalidad emitido es errado en Derecho por dos razones. Primero, la Asamblea Legislativa tiene la facultad constitucional expresa de modificar la competencia de este Tribunal. Segundo, tampoco surge de los hechos que se haya configurado una interfe *673 renda indebida de la Asamblea Legislativa con la función judicial. Comencemos por explicar lo primero.
B. Prerrogativa constitucional de la Asamblea Legislativa para modificar la competencia de los tribunales
Las enmiendas introducidas por la Ley Núm. 18 a la Ley de la Judicatura, surgen del ejercicio básico de las prerrogativas que nuestra Constitución concede expresamente a la Asamblea Legislativa. La See. 2 del Art. V de la Constitución de Puerto Rico expresa que “[l]os tribunales de Puerto Rico constituirán un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración. La Asamblea Legislativa, en cuanto no resulte incompatible con esta Constitución, podrá crear y suprimir tribunales, con excepción del Tribunal Supremo, y determinará su competencia y organización”. (Enfasis suplido). Art. V, Sec. 2, Const. ELA, LPRA, Tomo 1, ed. 2008, pág. 412.
Además, la See. 5 del mismo Artículo de la Constitución establece que “[e]l Tribunal Supremo, cada una de sus salas, así como cualquiera de sus jueces, podrán conocer en primera instancia de recursos de hábeas corpus y de aquellos otros recursos y causas que se determinen por ley”. (Enfasis suplido). Const. ELA, supra, Sec. 5, pág. 414. También, nuestra Constitución dispone que el Tribunal Supremo será el tribunal de última instancia en Puerto Rico. íd., See. 3, pág. 412.
A diferencia de lo que se argumenta en la Resolución del Tribunal, no nos cabe duda de que el texto claro de estas disposiciones reserva a la Asamblea Legislativa la facultad exclusiva de modificar la competencia original y apelativa del Tribunal Supremo. En efecto, hemos reafirmado y ex-plicado que la excepción a esa facultad es que el Tribunal Supremo sea el tribunal de última instancia en Puerto Rico y, además, conozca en primera instancia de recursos de hábeas corpus y de aquellos otros recursos y causas que se determinen por ley. Petrovich v. Srio. de Hacienda, 79 DPR 250, 260 (1956). Véanse, además: Lausell Ducós v. *674 A.C.A.A., 111 DPR 593 (1981); Rodríguez v. Registrador, 75 DPR 712 (1953).
Así quedó plasmado en los debates de la Asamblea Constituyente. El Informe de la Comisión de la Rama Judicial expuso sobre la See. 2 del Art. V de la Constitución, supra, que “[e]sta sección establece la completa unificación de los tribunales de Puerto Rico. La unificación de los tribunales produce, entre otros efectos, la eliminación de problemas técnicos de jurisdicción. El poder legislativo queda, no obstante, facultado para determinar la competencia de los tribunales [...]”. (Énfasis suplido). 4 Diario de Sesiones 2609 (1952). Más aún, el delegado Sr. Víctor Gutiérrez Fránqui expresó que
[...] debe dejarse este aspecto del problema jurisdiccional del Tribunal Supremo con suficiente libertad a la Asamblea Legislativa para que no pudiendo ni abolir el Tribunal Supremo ni variar su integración, ni quitarle la condición de tribunal apelativo ni de tribunal de última instancia —que eso sí queda garantizado constitucionalmente en nuestra proposición— pueda, sin embargo, disponer lo que la razón y las circunstancias aconsejen de tiempo en tiempo. 1 Diario de Sesiones 592 (1952).
De todo lo anterior, podemos concluir que el límite impuesto en la Constitución a la facultad legislativa de determinar la competencia de los tribunales es respetado por la Ley Núm. 18. El Tribunal Supremo sigue siendo el foro de última instancia de todas las causas. Solo fueron alteradas las vías para atenderlas. En ese sentido, la Legislatura entendió que sólo se podía certificar un recurso pendiente ante el foro primario si cuenta con la anuencia de todas las partes. De no ser así, solo se podría certificar un caso pendiente ante el Tribunal de Apelaciones.(3) Por lo tanto, la *675 Ley Núm. 18 no afecta nuestra facultad para atender la controversia en última instancia, según requerido constitucionalmente; tan solo regula el momento en que ejercemos dicha facultad.(4)
No es cierto que el estatuto en cuestión tiene el interés específico de inmunizar al Estado de la revisión judicial de casos que impugnen la constitucionalidad de las leyes de retiro. La realidad es que esta controversia puede ser evaluada por esta Curia en cualquier momento posterior ya sea obviando la intervención del foro apelativo intermedio al presentarse un recurso de certificación estando pendiente el caso ante ese foro o ejerciendo nuestra competencia apelativa una vez ese foro haya emitido una sentencia. Véase P.R.T. Co. v. H.I.E.Tel., 145 DPR 833, 835 (1998), voto explicativo del Juez Fuster Berlingeri. Incluso, la Ley Núm. 18 provee un mecanismo que permite nuestra inter *676 vención aun antes, cuando todas las partes prestan su anuencia a que se solicite la certificación estando ante el foro de primera instancia.
Con esto en mente, analicemos la distinción que hace el compañero Juez Asociado Señor Estrella Martínez al aseverar que la Ley Núm. 18 no afectó la “competencia constitucional” de este Tribunal y que, por ello, el Tribunal tiene jurisdicción para intervenir en esta etapa. Esta aseveración confunde los conceptos “jurisdicción” y “competencia”. Es sabido que la jurisdicción nos confiere la facultad para considerar y decidir casos o controversias y que la competencia se refiere al lugar donde se ventilará el litigio en un momento determinado. Rodríguez v. Registrador, supra, págs. 717-721. Recordemos que la Asamblea Constituyente eliminó las diferencias jurisdiccionales que existían anteriormente con el solo propósito de evitar los perjuicios causados ante el error técnico de presentar una causa en la sala equivocada. Id.
Sin embargo, aunque este Tribunal tenga jurisdicción para atender todo asunto en última instancia, ello no significa que pueda decidir, sua sponte, su competencia. Según expusimos previamente, esa facultad es exclusiva de la Asamblea Legislativa por concesión expresa en la Constitución. Por esta razón, aunque es correcta la distinción hecha entre jurisdicción y competencia, no hay tal cosa como competencia constitucional para atender cualquier causa en cualquier etapa por un alegado interés público.(5)
Además de facultar a la Asamblea Legislativa para determinar nuestra competencia, la Constitución afirma que el Tribunal Supremo atenderá en primera instancia el há *677 beas corpus y aquellos recursos y causas que se determinen por ley. Const. E.L.A., Art. V, Sec. 5, supra. En todo caso, la única “competencia constitucional” que existe es la de atender todos los casos en última instancia y en primera instancia los recursos de habeas corpus.(6) Sobre esto, re-sultan reveladoras las expresiones siguientes del delegado Señor Gutiérrez Franqui:
[n]osotros seguimos sosteniendo que creemos que esa garantía o jerarquía constitucional debemos reservarla única y ex-clusivamente para el auto de hábeas corpus, que al lado de él no debe haber otros señalados en la constitución y que es suficiente con disponer “aquellas otras causas que se determine por ley”, y entonces la Asamblea Legislativa podría, de tiempo en tiempo determinar en qué procedimientos, en qué causas extraordinarias puede concedérsele o debe concedérsele jurisdicción original al Tribunal Supremo. (Enfasis suplido). 3 Diario de Sesiones 1653 (1952).
En fin, tanto la posición de una mayoría de este Tribunal como la del Juez Asociado Señor Estrella Martínez usurpan la facultad reservada exclusivamente a la Asamblea Legislativa de determinar nuestra competencia original. Tal proceder trastoca intolerablemente el balance tripartito entre las ramas del Gobierno y representa una *678 falta de respeto a los procesos legislativos.(7) Art. I, Sec. 2, Const. ELA, LPRA, Tomo 1. Reiteramos que el hecho de que no podamos certificar los casos en este momento, según presentados por los peticionarios, no nos impide revisar en última instancia el dictamen que surja del foro primario.
Por último, una mayoría de este Tribunal analiza si la aprobación de la Ley Núm. 18 violó la doctrina de separación de poderes por constituir una interferencia indebida con la función judicial. Para ello, descansan en un mal llamado análisis constitucional de su faz. De una simple lectura de la Resolución surge que no estudiaron el texto de la ley, sino “las intenciones de las Ramas Ejecutiva y Legislativa de impedir que los peticionarios acudieran a este Tribunal mediante las peticiones de certificación que nos ocupan”. (Enfasis suplido). Resolución, pág. 31.
C. Interferencia con la función judicial
Una ley puede ser declarada inconstitucional de su faz o en su aplicación. E.L.A. v. Northwestern Selecta, 185 DPR 40 (2012). En lo pertinente a los casos que nos ocupan, hemos reiterado que “[c]omo parte del proceso de evaluar la constitucionalidad de una ley de su faz, es menester considerar si de su propio texto surge el vicio que la torna inconstitucional”. (Enfasis suplido). Id., pág. 71. Un ataque contra una norma de su faz requiere que el demandante demuestre que la norma es totalmente inválida y que no puede ser aplicada válidamente en circunstancia alguna. Asoc. Ctrl. Acc. C. Maracaibo v. Cardona, 144 DPR 1, 27 esc. 10 (1997), citando a L.H. Tribe, American Constitutio *679 nal Law, 2da ed., Nueva York, Ed. Foundation Press, 1988, pág. 1023; United States v. Salerno, 481 U.S. 739 (1987).
Ninguna parte de la Resolución que hoy se emite identifica que el texto de la Ley Núm. 18 tenga algún vicio que la torne inconstitucional. Lo que mía mayoría de este Tribunal indica es que “ese estatuto es insostenible ya que su trámite de aprobación demuestra un interés específico en inmunizar al Estado de la revisión judicial de casos que impugnen la constitucionalidad de las leyes de retiro”. Resolución, pág. 612. Así pues, la mayoría del Tribunal no realizó un análisis de la faz de la ley, como pretende hacer creer. Más bien, la Resolución analiza la constitucionalidad del estatuto en su aplicación y ni siquiera la “intención legislativa”, sino las motivaciones del legislador al adoptarlo. Utilizando este análisis, determina que la Ley Núm. 18 infringió la doctrina de separación de poderes por constituir una interferencia indebida con la función judicial. Para ello, alude a la doctrina esbozada en Colón Cortés v. Pesquera, 150 DPR 724 (2000). La mayoría ex-presa que en ese caso establecimos que
[...] para determinar si un acto legislativo que afecta la jurisdicción de este Tribunal viola la doctrina de separación de poderes hay que analizar no solo el texto del estatuto en cuestión, sino la intención de la Asamblea Legislativa. Es decir, “[l]o importante no es la forma del acto, sino su contenido”. (Corchetes y énfasis en el original). Resolución, pág. 602.
En aras de ser precisos, debemos aclarar que lo que dijimos en Colón Cortés v. Pesquera, supra, fue lo siguiente:
H]o importante al determinar si cierta actuación legislativa infringe el principio de separación de poderes, es si la intención clara y específica de la ley fue afectar el resultado de un pleito particular. Lo importante no es la forma del acto, sino su contenido. (Énfasis en el original suprimido y énfasis suplido), íd., pág. 764.
Es decir, una mayoría de este Tribunal obvia que en Colón Cortés v. Pesquera, supra, realizamos un análisis sobre la constitucionalidad de una ley en su aplicación a un *680 caso particular y establecimos que lo determinante es que la ley no pretenda afectar el resultado del mismo.(8)
Asimismo, la Resolución de una mayoría de este Tribunal omite en su discusión otros precedentes sobre interferencia indebida de la Legislatura con la función judicial,(9) incluyendo el más reciente, resuelto en 2011: Clases A, B y C v. PRTC, 183 DPR 666 (2011). En dicho caso, este Tribunal evaluó la constitucionalidad de la Ley Núm. 138-2005 (27 LPRA secs. 265a y 269j-l), en su aplicación al caso que tenía ante su consideración. Por voz del compañero Juez Asociado Señor Estrella Martínez, esta Curia resolvió que la Asamblea Legislativa no violó el principio de separación de poderes al aprobar la Ley Núm. 138-2005 con aplicación retroactiva. Esta ley concedió jurisdicción primaria y ex-clusiva a la Junta Reglamentadora de Telecomunicaciones para dilucidar todo reclamo sobre los servicios de telecomunicaciones. Ello, a pesar de que su aprobación conllevó la desestimación de un pleito de clase que estaba pendiente ante el Tribunal de Primera Instancia cuando se aprobó el estatuto. Esta ley también imponía un límite a la indemnización que se podía conceder en este tipo de casos.
Para fundamentar su decisión, este Tribunal reiteró la norma firmemente establecida de que "la Asamblea Legislativa puede, en el ejercicio de su poder inherente, afectar litigios pendientes sin contravenir el principio de la separación de poderes, siempre que lo haga en el marco de la enunciación de una nueva norma de derecho y no meramente de la adjudicación de una controversia específica”. *681 (Énfasis suplido). Clases A, B y C v. PRTC, supra, pág. 683, citando a Misión Ind. P.R. v. J.P., supra, págs. 110-112. Asimismo, sostuvo que en Colón Cortés v. Pesquera, supra, pág. 749, establecimos que “[l]o importante al determinar si cierta actuación legislativa infringe el principio de separación de poderes, es si la intención clara y específica de la ley fue afectar el resultado de un pleito particular”. (Énfasis suplido). Id., pág. 685. También destacó que se viola la doctrina de separación de poderes cuando la Asamblea Legislativa “pretenda hacer determinaciones de hecho o dictar conclusiones de derecho sobre un caso en trámite en los tribunales”. (Énfasis suplido). Id., pág. 688, citando a Robertson v. Seattle Audubon Soc., 503 US 429, 441 (1992).
Al aplicar las normas anteriormente reseñadas a la Ley Núm. 138-2005, supra, este Tribunal destacó lo siguiente:
La consecuencia de esta disposición de la Ley Núm. 138-2005, supra, es que el foro para reclamar en primera instancia se transfirió a una agencia administrativa. El asunto es tan claro que las propias clases admiten que la “Ley 138 en que se basó la sentencia no tuvo el efecto de privar a los demandantes de su derecho a reclamar sino, más bien, a dirigir la reclamación a un foro distinto” [...]
En este caso, no hay sentencia que haya declarado ilegal el cargo de teletecla ni creado estado de derecho alguno a favor de las clases, o que pueda ser revocada por la disposición en controversia de la Ley Núm. 138-2005, supra. Tal disposición en manera alguna adjudica la reclamación de las clases, ni pretende hacer determinaciones de hecho o dictar conclusiones de derecho. Tampoco dicta el resultado del caso pendiente. Y mucho menos usurpa la facultad del Poder Judicial para estructurar remedios adecuados, pues se trata de una disposición que meramente regula la autoridad para entender en primera instancia un asunto particular sin prejuzgar los méritos de la causa. Ante las circunstancias particulares del presente caso, es forzoso concluir que la disposición en cuestión no afecta de forma impermisible el pleito pendiente.
[...] Además, el foro judicial también estará disponible para revisar una determinación adversa por la Junta [...] (Citas omitidas). Clases A, B y C v. PRTC, supra, págs. 689 y 691.(10)
*682 Comparemos lo anterior con los casos que nos ocupan. La Ley Núm. 18 no priva a ciudadano alguno de su derecho a que su caso sea atendido por los tribunales. En los casos de autos, no existe una sentencia o determinación que haya creado estado de derecho alguno a favor de las partes de epígrafe o que pueda ser revocada por el estatuto en cuestión. La Ley Núm. 18 no adjudica de forma alguna el pleito de marras ni persigue realizar determinaciones de hecho o dictaminar conclusiones de derecho. La Ley Núm. 18 no dicta el resultado de los casos de epígrafe. Tampoco usurpa la facultad de la Rama Judicial para proveer el remedio que en derecho proceda, pues solo enuncia una nueva norma de derecho procesal que regula la competencia para atender en primera instancia los tipos de casos enumerados en la ley, sin prejuzgar los méritos de alguna causa de acción.
Por tal razón, y de forma casi idéntica al caso que este Tribunal resolvió hace apenas año y medio, es forzoso concluir que la Ley Núm. 18 no afecta inaceptablemente la adjudicación de los casos que nos ocupan, pues solo enuncia una norma procesal que provee a las partes una oportunidad adecuada para litigar su caso ante el foro judicial. (11)
III
Por los fundamentos antes expuestos, nos vemos obligados a disentir del dictamen de inconstitucionalidad que emite una mayoría de este Foro. Concurrimos con que la envergadura de los intereses involucrados en los pleitos ante el Tribunal de Primera Instancia amerita que estos sean resueltos de manera ponderada y diligente. Induda *683 blemente, dicho foro está capacitado para recibir y aquilatar la evidencia necesaria para atender efectivamente los reclamos de las partes demandantes. Además, estamos convencidos de que casos como estos requieren un expediente judicial completo para resolverlos de forma adecuada y fundamentada. Domínguez Castro et al. v. E.L.A. I, 178 DPR 1, 101 (2010), opinión disidente del Juez Presidente Señor Hernández Denton.
No obstante, la decisión que hoy emite una mayoría de este Tribunal hiere nuestro ordenamiento constitucional mediante una intervención inoportuna y errada que contraviene los principios básicos de justiciabilidad. La única controversia que esta Curia debe atender es si procede la certificación de los casos pendientes ante el foro primario. Dado que se denegaron las solicitudes de certificación, todo análisis ulterior es impropio. En virtud de la doctrina de autolimitación judicial, no procede abordar la constitucionalidad de la Ley Núm. 18; mucho menos, declarar inconstitucional la totalidad de los Arts. 1 y 2 del estatuto, los cuales incluyen múltiples asuntos que en nada se relacionan con los recursos de epígrafe.
El decreto de inconstitucionalidad también es incorrecto en derecho pues la Asamblea Legislativa tiene la facultad para modificar la competencia de este Tribunal. Al negarse a reconocer esta facultad, una mayoría de este Foro viola la doctrina de separación de poderes y usurpa urna función constitucional inherente de la Rama Legislativa. Por otro lado, en los casos ante nuestra consideración no se configura una interferencia indebida de la Legislatura con la función judicial, según la doctrina reiterada recientemente en Clases A, B y C v. PRTC, supra. La aprobación de la Ley Núm. 18 es producto de la facultad concedida constitucional y exclusivamente al Poder Legislativo para modificar la competencia del Tribunal Supremo.
En cuanto al pretexto que el raciocinio mayoritario utiliza para ignorar lo anterior, insistimos en que este estatuto no frustra el acceso a la justicia, contrario a lo sucedido en los casos recientes: Lozada Sánchez et al. v. JCA, *684 184 DPR 898 (2012), y Fund. Surfrider y otros v. A.R.Pe., supra.(12) En ellos, una mayoría de este Tribunal cerró las puertas de todo el sistema judicial a miles de ciudadanos. Por el contrario, en los casos ante nuestra consideración, la Ley Núm. 18 asegura que las causas sean atendidas adecuada y oportunamente en los foros designados mediante el recurso correspondiente.
Hoy, una mayoría de los miembros del Tribunal Supremo de nuestro País desnaturaliza el concepto de acceso a la justicia para transgredir y tronchar las facultades de la Asamblea Legislativa en una demostración insospechada de poder y de imprudencia judicial. Sin duda, esta actuación resta legitimidad al poder judicial en nuestro sistema de Gobierno. Lamentablemente, el flujo de la marea continúa erosionando los pilares constitucionales que dan firmeza a nuestro ordenamiento jurídico y nuestro sistema democrático de Gobierno. Disentimos de este proceder.

 Estos artículos también tratan sobre la competencia original y apelativa del Tribunal Supremo respecto a los recursos siguientes: (1) quo warranto, (2) auto in *669 hibitorio, (3) mandamus, (4) certificación intrajurisdiccional de casos ante el Tribunal de Apelaciones, (5) certificación interjurisdiccional, (6) certiorari sobre asuntos interlocutorios y (7) recurso gubernativo.

 Un ejemplo de lo anterior es la creativa, aunque errónea, teoría planteada por el compañero Juez Asociado Señor Estrella Martínez en su voto particular disidente.

 De hecho, esta no es la primera vez en nuestra historia jurídica que se limita el recurso de certificación de esta manera. Tal como reseñó la Oficina de Administración de los Tribunales en sus comentarios al P. del S. 367, hoy Ley Núm. 18, desde que dicho recurso se creó por primera vez mediante la Ley Núm. 115 de 26 de julio de 1958 hasta 1992, la certificación de un caso era procedente solamente cuando se encontraba “pendiente de resolución ante el Tribunal Superior, en grado de apelación o revisión [...] [E]l recurso de certificación no procedfía] en relación con casos origi *675 nados en el Tribunal Superior. La razón es obvia. En tales casos que están en proceso, los autos no están completos, a diferencia de los que tiene el Tribunal Superior en carácter apelativo y en los cuales ya se han archivado los autos en apelación o revisión”. (Énfasis suplido). Á.R. Calderón y D. Rivé Rivera, Manual de procedimientos apelativos, San Juan, Rev. Jur. UIPR, 1987, págs. 155-156. Análogamente, en 1995, una enmienda a la Ley de la Judicatura de 1994 proveyó para la expedición del auto de certificación únicamente cuando una de las partes en el pleito lo solicitara y el caso estaba pendiente ante el Tribunal de Circuito de Apelaciones. Ni siquiera el Tribunal Supremo lo podía expedir sua sponte. H.A. Sánchez Martínez, Práctica jurídica de Puerto Rico: derecho procesal apelativo, San Juan, Lexis-Nexis de Puerto Rico, 2001, pág. 55. Así se encontraba delimitada la competencia de este Tribunal hasta la Ley de la Judicatura de 2003. Cabe destacar que la Ley Núm. 18 proveía para el recurso de certificación intrajurisdiccional de casos pendientes ante el Tribunal de Apelaciones. Empero, la Resolución emitida también invalida la modificación hecha a este recurso sin fundamento alguno.

 A modo comparativo, las disposiciones del 28 USCA see. 1254(2) permiten que una Corte de Apelaciones del Circuito Federal certifique una pregunta de derecho al Tribunal Supremo de Estados Unidos en aquellos casos civiles o criminales en que el foro apelativo intermedio interese recibir instrucciones. Al amparo de la normativa federal, la facultad de procurar la certificación de una pregunta reside exclusivamente en la Corte de Apelaciones y no en las partes del litigio. Incluso, como señaló recientemente el ex Juez Asociado Stevens, se ha notado en términos prácticos que “[t]he certification process has all but disappeared in recent decades”. United States v. Seale, 130 S.Ct. 12 (2009) (Stevens, J., “statement [...] respecting the dismissal of the certified question”). No obstante, nadie ha planteado que la ausencia de un recurso de certificación intrajurisdiccional, disponible para las partes o sua sponte en cualquier etapa del litigio federal, constituye un menoscabo al acceso a la justicia o a la jurisdicción del Tribunal Supremo como el tribunal de mayor jerarquía en el sistema federal. Véase, además, A. Nielson, The Death of the Supreme Court’s Certified Question Jurisdiction, 59 Oath. U.L. Rev. 483, 488 (2010).

 Nuestra Constitución sigue el modelo federal en estos asuntos. Por eso, resulta pertinente señalar las expresiones del Tribunal Supremo en Ohio v. Wyandotte Chemicals Corp., 401 US 493, 497 (1971): “although it may initially have been contemplated that this Court would always exercise its original jurisdiction when properly called upon to do so, it seems evident to us that changes in the American legal system and the development of American society have rendered untenable, as a practical matter, the view that this Court must stand willing to adjudicate all or most legal disputes [...] over which this Court does have original jurisdiction”.

 El recurso propuesto por el compañero Juez Asociado Señor Estrella Martínez es el equivalente funcional al recurso de amparo existente en Europa y América Latina, el cual es ajeno a nuestro sistema de derecho. Según Hart y Weschler: “[i]n contrast with the United States, many European countries employ ‘constitutional courts’ whose primary function is to review constitutional claims, especially regarding the constitutionality of statutes; within such regimes, other courts are generally barred from holding statutes unconstitutional [...] In such proceedings, constitutional courts characteristically require only ‘an abstract or objective question’ to determine the constitutionality of a new law; ‘no concrete dispute involving individual situations’ is necessary”. R.H. Fallon, Jr., J.F. Manning, D.J. Meltzer y D.L. Shapiro, Hart and Weschler’s The Federal Courts and The Federal System, 5ta ed., Nueva York, Foundation Press, 2009, pág. 58.
“En los Estados Unidos [y Puerto Rico] el sistema de revisión judicial que impera es el llamado descentralizado o difuso. Mediante este sistema se concede el poder de revisión judicial de la constitucionalidad de los actos de las otras ramas, a todos los tribunales del sistema jurisdiccional, para ser usado a instancia de cualquier persona afectada por una ley o una actuación del gobierno”. (Enfasis suplido). J.A. Andréu García, La revisión judicial de Estados Unidos, Puerto Rico y Europa: una perspectiva de derecho comparado, 34 (Núm. 2) Rev. Jur. UIPR 403, 407-408 (2000), citando a M. Cappelletti y W. Cohen, Comparative Constitutional Law, Cases and Materials 73-90 (1979).

 No olvidemos que “[l]a teoría de la separación de poderes requiere que las facultades delegadas por el pueblo en la Carta Constitutiva se distribuyan entre las tres ramas. Su premisa es evitar la concentración de poderes en una sola. La relación entre los poderes del Gobierno debe ser dinámica y armoniosa. Su éxito depende de que cada una acepte y respete la autoridad de las otras y entienda la interrelación de sus funciones. Su perdurabilidad requiere que cuando haya conflicto sobre el alcance de los poderes constitucionales de cualquiera de ellas, los tribunales intervengan con prudencia y deferencia para aclarar los contornos de la Constitución y facilitar la resolución de las diferencias”. (Énfasis suplido). Silva v. Hernández Agosto, 118 DPR 45, 57 (1986).

 El tergiversado análisis de una mayoría de este Tribunal sobre lo resuelto en Colón Cortés v. Pesquera, 150 DPR 724 (2000), los lleva a concluir que los Arts. 1 y 2 de la Ley Núm. 18 son inconstitucionales porque la intención del legislador fue impedir que las partes demandantes en estos casos acudieran ante nos mediante recurso de certificación intrajurisdiccional. ¿Qué relación tiene esta supuesta intención del legislador con el recurso de mandamus, el certiorari interlocutorio y los otros recursos mencionados en esos artículos que también fueron declarados inconstitucionales?

 Por ejemplo, los casos Suárez v. Tugwell, Gobernador, 67 DPR 180 (1947), y Sunland Biscuit Co. v. Junta Salario Mínimo, 68 DPR 371 (1948). En ambos, se sostuvo la validez de las leyes cuestionadas tras concluir que no habían interferido indebidamente con casos pendientes al momento de su aprobación.

 Nótese que los criterios por considerar para evaluar si una ley interfiere indebidamente con la función judicial en un caso no incluyen el que esta procure *682 “dilatar su trámite en aras de evadir una revisión judicial efectiva”, como se manifiesta sin fundamentación legal alguna en la pág. Í1 de la Resolución. Aunque asegura que este Tribunal “ha dejado claro” la frase antes citada, no hemos encontrado precedente alguno que lo apoye.

 Debemos resaltar que el proyecto que se convirtió en la Ley Núm. 18 fue presentado meses antes que el proyecto que se convirtió en la Ley Núm. 3 sobre el sistema de retiro.

 Esa mayoría olvida que el verdadero acceso a la justicia no equivale necesariamente a un paso directo al foro de última instancia, sino que se garantiza de formas diversas. Por ejemplo, brindando oportunidad a toda persona de comparecer a los tribunales para reclamar sus derechos y a que sus conflictos sean resueltos adecuada y oportunamente. También, educando a la ciudadanía sobre los procesos judiciales y asegurando que tengan representación legal competente. A su vez, todo esto requiere interpretar las leyes conforme a los principios de igualdad y equidad. Gracias al carácter unificado de nuestro sistema judicial, nuestro foro no es el único con el dominio de impartir justicia y asegurar su acceso a todos y todas. Los jueces y las juezas, incluyendo los de tribunales de menor jerarquía, cumplimos con este deber.